Decided 17 October, 1904.

**SLATE v. HENKLE.** ·

[78 Pac. 325.]

</div>

EXECUTOR DE SON TORT—STATUTORY CHANGE OF COMMON-LAW RULE.

1. The effect of the enactment of Section 385 of B. & C. Comp. has been to so change the common-law rule as to the liability of an executor de son tort that he is now liable only to the legal representative of the deceased for the results of his interference.

SET-OFF IN FAVOR OF EXECUTOR DE SON TORT.

2. An heir who acted as administrator of his ancestor's estate under an appointment void because made in the wrong county, if he is afterward sued for conversion by the rightful administrator, may set-off such sums as he has paid out of the estate for its benefit.

Executor de son Tort—Cross-Bill—Adequate Law Remedy.

3. In an action for conversion by a legal representative of a decedent against an executor de son tort the latter may show as an off-set under the general issue such payments made by him officially as the lawful representative would have been bound to make, and he therefore has an adequate remedy at law, so that he cannot maintain a cross suit in equity to recover the value of his expenditures.

Accounting With Executor de son Tort—Items Disallowed.

4. An administrator de son tort is not entitled on an accounting to an allowance for sums paid to a surety company for becoming surety on his bond, or for appraisers' and justices' services in taking acknowledgments, nor for services rendered by him or his attorneys, unless such services were rendered in the preservation of the property of the estate, and were conducive to its benefit.

Idem.

5. On an accounting by an executor de son tort, he is not entitled to any fees as executor, and if the fees have been paid they must be returned, such executor being liable to the *de jure* executor therefor.

From Linn: Reuben P. Boise, Judge.

Statement by Mr. Chief Justice Moore.

This is a suit to recover expenses incurred and fees claimed to have been earned in the alleged administration of a decedent's estate. Frances Slate, an inhabitant of Benton County, died intestate therein November 22, 1895, and, having left real and personal property in Linn County, the county court thereof, on May 16, 1900, appointed her son, Porter Slate, the plaintiff herein, administrator of her estate, who gave the required undertaking and received letters of administration. Thereafter the county court of Benton County appointed J. E. Henkle, the defendant herein, administrator of such estate, who, having duly qualified, instituted a suit against Slate, and secured a decree discharging him: *Slate's Estate*, 40 Or. 349 (68 Pac. 399). Henkle thereupon began an action against Slate to recover $600 for the use of such real property and the sum of $230.70 for certain personal property belonging to the decedent's estate, which it was alleged he had converted to his own use. Slate, having answered in such action, also filed the complaint herein in the nature of a cross-bill in equity, alleging, in effect, that, relying upon his appointment as administrator, and acting in good faith, he

sold certain personal property belonging to the decedent's estate, realizing therefrom the sum of $191.98, and that he had paid on account of expenses incurred in administration the following sums:

| | |
|---|---:|
| Taxes on the decedent's property _____ $ | 8 00 |
| To a surety company for responsibility assumed on his undertaking _____ | 50 00 |
| To appraisers _____ | 6 00 |
| To justice's fees administering oaths to appraisers_ | 2 00 |
| To baling hay _____ | 14 50 |
| To hauling hay to market_____ | 5 85 |
| To storing hay in a warehouse_____ | 5 82 |
| To attorney's fees_____ | 100 00 |
| Total _____ $ | 192 17 |

Slate further alleges that he was entitled to $100 for service performed in caring for the decedent's property from May 16, 1900, to March 3, 1902; and that he had no plain, adequate, or speedy remedy at law. A demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of suit, was overruled, and, the defendant herein (Henkle) declining further to plead or answer, a decree was rendered requiring him to pay the sums so incurred and demanded, and he appeals.

                                                    REVERSED.

For appellant there was an oral argument by *Mr. W. R. Bilyeu* and *Mr. L. L. Swan*, with a brief over the names of *W. R. Bilyeu, L. L. Swan,* and *W. S. McFadden,* to this effect.

I. All acts done under a void appointment are as if done by a stranger: Black, Judgments, § 218; Freeman, Judgments, (3 ed.) § 117; Woerner, Administration, (2 ed.) §§ 144, 266, 274.

II. Trespasser or executor de son tort can acquire no benefit by his own wrongful act: 1 Williams, Executors, 312; Woerner, Administration, (2 ed.) § 194.

III. All the relief that Slate is entitled to can be obtained in a court of law: *Rutherford* v. *Thompson*, 14 Or. 236, 242 (12 Pac. 382); *Saam* v. *Saam*, 4 Watts, 432; *Weeks* v. *Gibbs*, 9 Mass. 74, 77; *Cary* v. *Guillow*, 105 Mass. 18, 21 (7 Am. Rep. 494); 1 Williams, Executors, 316; 7 Am. & Eng. Enc. Law (1 ed.) 189; Woerner, Administration, (2 ed.) § 195.

For respondent there was an oral argument by *Mr. J. R. Wyatt* and *Mr. J. J. Whitney*, with a brief over the names of *Weatherford & Wyatt,* *Geo. W. Wright*, and *J. J. Whitney*, to this effect.

Slate was a *de facto* officer, and was bound to care for the property entrusted to him, which necessarily required some expenditures. The emoluments of an office depend upon the performance of the duties, and after performing the duties he is entitled to the rewards: *Smith* v. *Mayor*, 37 N. Y. 518; *McVeany* v. *Mayor*, 80 N. Y. 185 (36 Am. Rep. 600); *Stuhr* v. *Curran*, 44 N. J. Law, 181 (43 Am. Rep. 353); *Stebenville* v. *Culp*, 38 Ohio St. 18 (43 Am. Rep. 417); *Attorney General* v. *Davis*, 44 Mo. 131 (100 Am. Dec. 260); *Auditor* v. *Benoit*, 20 Mich. 176 (4 Am. Rep. 382); *Commissioners.* v. *Anderson*, 20 Kan. 298 (27. Am. Rep. 171).

MR. CHIEF JUSTICE MOORE delivered the opinion.

1. It is contended by defendant's counsel that Slate had an adequate remedy in the law action to recoup all expenses that he had legitimately incurred in relation to the decedent's estate by alleging such facts in an answer to the complaint therein, and hence an error was committed in overruling the demurrer to the cross-bill and in rendering the decree herein. Any person who, without authority, intermeddled with the estate of a decedent, by doing such acts as properly belonged to the office of an executor or administrator, was originally denominated an

executor de son tort, who could be sued by the legal representative of the deceased, by a creditor of the estate, by a legatee, and, if all the debts were paid, by a distributee, and was liable to the extent of the assets which he had received: 11 Am. & Eng. Enc. Law (2 ed.), 1342, 1351. Our statute has abolished the common-law rule which made one who officiously interfered with the property of a deceased person an executor de son tort by depriving creditors of the estate and others of the remedy which they anciently possessed of charging the intermeddler as an executor of his own wrong; but the latter is now made responsible only to the legal representative of the decedent for the value of all property taken or removed and for all injury caused by his interference therewith: B. &. C. Comp. § 385; *Rutherford* v. *Thompson,* 14 Or. 236 (12 Pac. 382). In the case at bar, the intestate, at the time of her death, not being an inhabitant of Linn County, the county court thereof had no jurisdiction of the subject-matter of her estate, and its letters of administration issued to Slate were therefore void: *Slate's Estate,* 40 Or. 349 (68 Pac. 399). The appointment being a nullity, Slate's possession and sale of the personal property belonging to the estate, if it were not for the immunity afforded by our statute, amending the common-law rule, would have rendered him an executor of his own wrong: 1 Abbott, Probate Law, § 407; *Bradley* v. *Commonwealth,* 31 Pa. 522. He undoubtedly had reason to believe and did believe that his appointment was valid, and this being so, every advantage that an executor de son tort can invoke should be applied in his favor.

2. The rule is universal that such an executor is subject to all the liabilities of an ordinary executor without being entitled to any of his privileges: 11 Am. & Eng. Enc. Law (2 ed.), 1351; 1 Woerner, Administration (2 ed.), § 193; 1 Williams, Executors, *216. The statute 43 Eliz. c. 8, so

far as material herein, enacted "That all and every person and persons that hereafter shall obtain, receive, and have any goods or debts of any person dying intestate, or a release or other discharge, or any debt or duty that belonged to the intestate, * * shall be charged and chargeable as executor of his own wrong; and so far only as all such goods and debts coming to his hands, or whereof he is released or discharged by such administrator, will satisfy, deducting nevertheless to and for himself allowance * * of all other payments made by him, which lawful executors or administrators may and ought to have and pay by the laws and statutes of this realm": 4 Bacon, Ab. (Bouv. Notes), 28. The enactment of this statute probably gave rise to the rule adopted by courts that just debts of a decedent which have been paid by an executor de son tort according to their legal priority may be set off against the amount of damages for which his intermeddling has rendered him liable: 11 Am. & Eng. Enc. Law (2 ed.), 1353; *Cook* v. *Sanders*, 15 Rich. Law (S. C.), 63 (94 Am. Dec. 139; *Bennett* v. *Ives*, 30 Conn. 329. Mr. Schouler, in his work on Executors and Administrators (section 188), in discussing the right of a person concerned in, but not the legal representative of, a decedent's estate, to be credited with expenses incurred in the due administration thereof, says: "The acts, moreover, of one having the color of a title or a claim to administration, and, like a widow, next of kin, legatee, or creditor, directly interested in preserving the estate, are, if so performed that the rightful allowance, share, legacy, or debt of the custodian may stand as indemnity for the transaction, treated with increasing indulgence, in contrast with those performed by some stranger who officiously intrudes." The editors of the American and English Encyclopedia of Law (1 ed. vol. 28, p. 499), in defining the word" volunteer," say: "A person who gives his services without any express or implied

promise of remuneration in return is called a volunteer,
and is entitled to no remuneration for his services.  * *
But a person who, though not obliged to do an act, yet
has an interest in doing it, is not necessarily a volunteer."
In the case at bar it will be remembered that Slate is a
son of the deceased, and was chosen administrator of her
estate before Henkle was constituted the legal representa-
tive thereof. Slate's mother having died intestate, seised
of real property in this State, he thereby became invested
with the title to a share thereof (B. & C. Comp. § 5577),
and also to a part of her personal property, after the
payment of her debts and the distribution of allowances
(B. & C. Comp. § 5578), and is directly interested in the
settlement of her estate, and entitled to be credited with
all reasonable sums paid out by him in the settlement
thereof that resulted in a benefit thereto : *Rutherford* v.
*Thompson*, 14 Or. 236 (12 Pac. 382).

3. This being so, it remains to be seen whether or not
he had a plain, adequate, and complete remedy at law for
the recovery of the sums so paid and for the services per-
formed, for, unless such redress existed, he is not pre-
cluded from resorting to a suit in equity for the settlement
of his reasonable demands : B. & C. Comp. § 390. Mr.
Woerner, in his valuable work on the American Law of
Administration (2 ed. § 195), in speaking of the right of
an executor de son tort to recoup in an action instituted
against him by the administrator to recover compensation
for the injury sustained by reason of his intermeddling
with the goods of a deceased person, says : " He may
prove, however, under the general issue, in mitigation of
damages, payments made by him in the rightful course
of administration, because it is no detriment to the admin-
istrator *de jure* that such payments were made by the ex-
ecutor de son tort." Williams, in his work on Executors
(American Notes by Randolph & Talcott, vol. 1, p. 316),

in discussing this subject, says : " With respect to the
liability of an executor de son tort at the suit of the law-
ful representative of the deceased, there are several author-
ities to show that, if the rightful executor or administrator
bring an action of trover or trespass, the executor de son
tort may give in evidence, under the general issue, and in
mitigation of damages, payments made by him in the
rightful course of administration, upon this ground : that
the payments which are thus, as it is termed, recouped in
damages, were such as the lawful executor or adminis-
trator would have been bound to make; and therefore it
cannot be considered as any detriment to him that they
were made by an executor de son tort." To the same
effect, see 11 Am. & Eng. Enc. Law (2 ed.), 1352.

Mr. Chief Justice LORD, in *Rutherford* v. *Thompson*, 14
Or. 236 (12 Pac. 382), in discussing the effect of our statute
amending the common-law rule, and of the right of an
executor de son tort to be credited with payments which
he may have made that are tantamount to a due admin-
istration of a decedent's estate, says : "The person who
intermeddles with the goods of the deceased is now only
responsible to answer in an action to the rightful executor
or administrator. And whether we consider the inter-
meddler as an executor de son tort or as a wrongdoer, the
liability to respond to the rightful executor or adminis-
trator is the same, and unaffected, and the law unchanged.
The fiction of office may be gone, but the unauthorized
act of intermeddling remains, to be dealt with judicially,
according to the principles of right and justice, as applied
by the law in such cases. Now, from the fact that the in-
termeddler with the goods of a deceased is only liable to
respond to the rightful executor or administrator for the
value of the goods, etc., it by no means follows, if what he
did was of benefit, and not injury, to the estate—as the
payment of funeral expenses, or debts of the deceased, or

charges such as the rightful representative might have been compelled to pay—he would not be allowed to show the same in mitigation of damages in an action of trover, instituted by such executor or administrator. In thus compelling him to account with only the rightful representative the statute does not purport or undertake to deprive him of any proper or legitimate defense. The title of executor de son tort may be repudiated, but the justice of the law will remain, to distinguish between acts which are beneficial and those which are injurious to an estate." We think Slate had an adequate remedy in the law action instituted by Henkle against him to recoup against the claim for damages caused by his intermeddling all payments made by him that necessarily conduced to the benefit of his mother's estate.

4. There are some items, however, in his claim, as disclosed by the cross-bill, that could never have been of any advantage thereto. Thus the sum paid to the surety company for responsibility assumed on Slate's undertaking, and also the appraisers' and justice's fees. The sum paid on account of attorney's fees was no advantage, unless the service rendered was in preserving the property of the estate; certainly not in the ordinary settlement thereof, or in defending in the former suit. The sum of $100 claimed by Slate should not be allowed, unless his service, like that of his attorneys, was performed in preserving or caring for the property, resulting in a benefit thereto.

5. He is not entitled to any sum whatever as administrator's fees, and if the county court appointing him had allowed and he had secured the sum prescribed by law as compensation in such cases, as he was only a *de facto* representative of the decedent's estate the *de jure* administrator could have recovered such fees from him, for the rule is almost universal that an officer *de facto* is liable to

an officer *de jure* for emoluments of office after ouster: Throop, Pub. Officers, §§ 256, 523, 663.

The conclusion reached is not in contravention of the opinion announced in *Oh Chow* v. *Brockway*, 21 Or. 440 (28 Pac. 384). In that case, the plaintiff's intestate having died in Douglas County under such circumstances as to induce the belief that a crime had been committed, the coroner thereof held an inquest upon the body, which he caused to be buried, having found thereon a certificate of deposit and some money, which he took possession of, and delivered to the county treasurer, who placed it to the credit of the county. The county court of Multnomah County appointed the plaintiff administrator of the decedent's estate, and thereafter the defendant, having been appointed administrator thereof by the county court of Douglas County, received from the county treasurer the money and certificate so found. The defendant having secured the money evidenced by the certificate of deposit, the administrator first appointed commenced an action against him to recover the sums in his possession, which it was alleged he had converted to his own use, the complaint stating that the deceased at the time of his death was an inhabitant of Multnomah County. The answer denied the material allegations of the complaint, and for a further defense stated the facts hereinbefore detailed, and averred that the intestate died an inhabitant of Douglas County, and the coroner, in causing his body to be interred, incurred an expense of $50.75, which sum was audited and paid by the county, on behalf of which defendant secured the money and the certificate of deposit, and that $55 of the sum so received had been used by him for the benefit of such estate. A reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a judgment of nonsuit, and the plaintiff appealed. In reversing the judgment, Mr.

Chief Justice STRAHAN, commenting on the payments alleged to have been made for the benefit of the estate, said: "The defendant's statement that he had paid out certain claims, burial expenses, etc., can be of no avail, because he was not authorized to make such payments. The law required Douglas County to pay such funeral expenses, and to deduct the amount from the moneys in the treasury before the county court ordered them paid over to the legal representatives of the deceased person. If it neglected to do what the law plainly required, the defendant is not in a situation to either assert or maintain the claim of Douglas County. It must be remembered that this is a case where the public officials of the county assumed to dispose of the money of a deceased person under and by authority of the statute. In such case all the essential requirements of the statute must be followed, or the rights of the legal representative to the fund will remain unaffected." In that case the statute made it the duty of the county court of Douglas County to deduct from the money deposited with the county treasurer all expenses incurred by the county in holding the inquest and in burying the body, and to pay the remainder to the representative of the deceased: B. & C. Comp. §§ 1697, 1698. Such expenses were not deducted from the amount deposited in the treasury, but the entire sum was delivered to the defendant, and as he had no right, under any circumstance, to any of the money, except the remainder after the payment of the expenses, his payment thereof was illegal, and did not entitle him to recoup the sums paid by him. In the case at bar Slate was interested in the estate of his mother, and therefore not a volunteer, and, as he could have interposed the defense indicated in the law action, an error was committed in overruling the demurrer.

The decree will therefore be reversed, the demurrer sustained, and the cross-bill dismissed.          REVERSED.