[No. 2057]

# C. L. RICHARDS, Respondent, *v.* S. E. VERMILYEA, Appellant.

[175 Pac. 188; 180 Pac. 121]

1. CORPORATIONS — CONTRACT TO DELIVER STOCK — ACTION FOR BREACH—EVIDENCE.

In suit for breach of contract to convey 25,000 shares of capital stock of corporation to be organized to develop mining claims, made in consideration of plaintiff's trust deed of his interest or option in claims, evidence *held* insufficient to sustain verdict of $300.

2. JUDGMENT—SUPPORT IN FACTS—ASSUMPTIONS.

Judgment cannot be based upon assumptions or upon conclusions reached by "guess," but must be sustained by facts shown by the evidence or admitted by the party to be bound.

3. CORPORATIONS—SALE OF STOCK—BREACH—DAMAGES.

In action for breach of contract to deliver shares of capital stock of corporation to be organized, its value, if a proper criterion of damages, would be as of time of breach, and not as of date of contract.

## ON PETITION FOR REHEARING

1. APPEAL AND ERROR—REVIEW—REASON FOR JUDGMENT—EVIDENCE.

The rule of law that a judgment which is right will not be reversed merely because a wrong reason is given may not be applied to uphold a judgment not sustained by sufficient evidence.

## ON COSTS

1. COSTS—ON APPEAL—AWARD—STATUTES.

Under the provisions of Rev. Laws, 5381, where the supreme court in reversing a judgment makes no order as to costs, the costs shall be allowed to the party obtaining relief, and where a judgment for plaintiff for $300 was reversed, it follows as a matter of course that costs are recoverable by appellant without an order therefor.

2. COSTS—ON APPEAL—COPY OF TRANSCRIPT—COURT RULING.

In computing the costs under supreme court rule 6, fixing the amount to be allowed per folio for a typewritten copy of the transcript, it was error for the clerk to include in his calculation the original papers on file and included in the record.

3. COSTS—ON APPEAL—REVERSAL—PREMIUMS ON APPELLANT'S STAY BOND.

Items for cash paid a surety company by appellant as premiums on the appeal and stay bond are proper elements of cost to be collected by appellant upon reversal, in view of Rev. Laws, 699.

APPEAL from Fifth Judicial District Court, Nye County; *Mark R. Averill,* Judge.

Suit by C. L. Richards against S. E. Vermilyea. Judgment for plaintiff, motion for new trial denied, and defendant appeals. **Reversed. Rehearing denied.**

On respondent's appeal from the ruling of the clerk on the cost bill, ruling of the clerk sustained as modified.

*H. R. Cooke,* for Appellant.

*Geo. B. Thatcher* and *C. L. Richards,* for Respondent:

Where there is a conflict in the testimony, the judgment of the trial court will not be set aside, unless clearly against the weight of evidence. Ency. Ev., vol. 14, p. 214; McNamee v. Nesbitt, 24 Nev. 400; Roberts v. Webster, 25 Nev. 94; Roberti v. Anderson, 27 Nev. 396; Tonopah L. Co. v. Riley, 30 Nev. 312; Murphy v. Southern Pacific Co., 31 Nev. 120. "Where a case is tried by the court, it will be presumed that he passed on every question presented by the record; and, if his decision can be sustained on any grounds deducible from the pleading and the evidence, the judgment will be affirmed." Cent. Dig., secs. 3402, 3421.

By the Court, COLEMAN, J.:

Respondent brought suit to recover judgment in the sum of $500 for breach of contract. In 1916 respondent and one Degman obtained an option upon three mining claims situated in the Manhattan mining district, Nye County, Nevada, and thereafter sold said option to appellant. This suit grows out of the contract entered into between appellant and respondent relative to the sale of respondent's half interest. The written contract entered into between the parties is as follows:

"This agreement, made in duplicate and entered into this 26th day of May, 1906, by and between C. L. Richards, of the town of Manhattan, county of Nye, State of Nevada, the party of the first part, and S. E. Vermilyea, of the town of Goldfield, county of Esmeralda, state aforesaid, the party of the second part, witnesseth:

"That whereas, the said party of the first part is the owner of an undivided one-half ($\frac{1}{2}$) interest in a certain

escrow deed wherein those certain mines or mining claims known as and called the 'Reno,' 'Reno No. 1,' and 'Reno No. 2' are conveyed by Chas. Nash and Chas. Knox to C. L. Richards and J. T. Degman;

"And whereas, the said party of the second part is desirous of purchasing said mining claims and incorporating same for the purpose of taking over, working and developing said claims:

"Now, therefore, the said party of the first part for and in consideration of the sum of five hundred ($500) dollars lawful money of the United States to him in hand paid by the said party of the second part, the receipt of which is hereby acknowledged, and the further consideration of the covenants and agreements hereinafter contained and reserved on the part of the said second party, to be kept and performed by said second party, has this day executed a good and sufficient deed of all his interest to the said second party as trustee.

"It is covenanted and agreed on the part of the said second party, in consideration of the aforesaid premises, to deliver to said first party, his heirs or assigns, twenty-five thousand (25,000) shares of the capital stock of a corporation to be hereafter organized for the purpose of taking over, operating and developing aforesaid mining claims. Said stock to be delivered to said first party on or before sixty (60) days from the date of this agreement.

"This agreement is binding upon the heirs, executors, administrators or assigns of all the parties hereto.

"In witness whereof, we have hereunto set our hands and seals the day and year first above written.

"C. L. Richards.     [Seal.]
"Witness: ———.          S. E. Vermilyea.     [Seal.]

"It is agreed that the within-mentioned twenty-five thousand shares of stock is subject to pool with all other stock with the exception of treasury stock.

"C. L. Richards."

Judgment was rendered in behalf of the plaintiff in the case for $300, together with interest from July 25, 1916, and costs, from which judgment and an order denying a motion for a new trial this appeal is taken.

1, 2. The evidence is very conflicting as to just how much cash was paid by appellant to Degman and respondent for their option (it is not contended that it was over $2,000), but as we view the situation it does not matter how much he paid, for this controversy grows out of the stipulation of appellant to deliver to respondent 25,000 shares of stock in a corporation which was to take title to the mining ground described in the contract. We see no difference between this case, wherein defendant agreed to give 25,000 shares of stock in a company to be organized in lieu of a payment of $300, and a case where a person pays $300 in cash, for which he is to receive 25,000 shares of stock in a corporation to be organized. The same rules of law would apply to both cases. Defendant pleaded in his answer facts which he claimed excused the failure to incorporate the company, and alleged his readiness so to do, but we do not consider these allegations of any importance in disposing of this appeal.

We quote the findings and conclusion of law as made by the trial court, as follows:

"That the defendant, on the 26th day of May, 1906, agreed to deliver within sixty days 25,000 shares of stock in a corporation to be formed, in lieu of the sum of $300, which said sum otherwise should have been paid the plaintiff as a part of his share of the purchase price of the option described in the complaint. That the defendant did not deliver the said stock within sixty days or at all.

"Conclusion of law reached: That the plaintiff is entitled to judgment for the sum of $300, interest from the 25th day of July, 1906, to the date of this judgment, and to his costs."

The process by which the trial judge reached his conclusion as to the amount for which judgment should be entered is disclosed by his opinion, from which we quote as follows:

"In the 'usual' corporation 600,000 shares of stock cover the outlay, which in this case was $7,800, of which

$6,000 was the actual purchase price of the ground and $1,800 (double the amount Degman received in money) was the purchase price of the option. The stock then was worth at that time to all these people, except Degman, $.013 per share, and 25,000 shares were worth $325, an amount near enough $300 for that figure to be a good guess at the value of the stock on a rough estimation."

It will be seen from this quotation that the court, in arriving at its conclusion as to the amount for which judgment should be rendered, assumed that the company which was to have been incorporated should have been capitalized for 600,000 shares. It then determined that the defendant actually paid for the property which was to go into the company the sum of $7,800, and upon that basis figured the value of the stock as of the date of the contract between the parties at $.013 per share, or $325 for the 25,000 shares, which, the court says, was "an amount near enough $300 for that figure to be a good guess at the value of the stock."

The judgment of the court is not sustained by the evidence. In the first place, there was absolutely no evidence introduced as to the number of shares into which it was agreed the proposed company should be divided, and it is admitted by plaintiff that the proposed company was never organized. The court assumed that the "usual" corporation was divided into 600,000 shares, and upon this assumption reached its conclusion. Judgment cannot be based upon assumptions, or upon conclusion reached by "guess," but must be sustained by facts shown by the evidence or admitted by the party to be bound. Even if it had been proven what was usual in such matters, it is doubtful if such evidence could be considered.

3. The trial court evidently took, as a basis for reaching a conclusion (which it finally guessed at) as to the value of the stock in a company which never existed, the purchase price of the mining claims as called for in the option plus the amount which it found was paid by defendant for the option; but in fixing the time from

which interest should begin to run upon the judgment made it sixty days after the sale of the option, or the time when the stock should have been delivered under the terms of the contract. If the value of the property itself was a proper criterion of the damage which plaintiff sustained (as to which we express no opinion), it must be such value as of the time of the breach of the contract, and not as of the date of the contract; and as mining property is very fluctuating in value, we cannot assume that because it is of a certain value at a particular date it was of that value sixty days later.

We do not wish to be understood as saying that if there had been proof that it was agreed between the parties that the company contemplated was to be divided into 600,000 shares of stock the theory of the trial court as to the method of arriving at plaintiff's damage was correct. We express no idea as to the proper theory, if there be a correct one, upon which plaintiff can recover under the facts of the case. That question is not before us. We simply hold that upon the record the evidence does not sustain the judgment.

It is ordered that the judgment be reversed.

## ON PETITION FOR REHEARING

By the Court, COLEMAN, C. J.:

A very earnest petition for a rehearing has been filed in the above-entitled case, and we will briefly state our views thereon.

It is first insisted that the evidence shows that Richards and Degman sold their option for $2,000, of which $1,500 was paid, leaving a balance of $500 unpaid upon the purchase price, and that this amount is the amount of damage sustained by respondent. Conceding, for the purpose of disposing of this petition, that the entire purchase price was paid, except $500, it appears beyond dispute that the unpaid $500 was to have been paid in stock, by delivery to respondent of 25,000 shares upon a designated date; hence it is clear that, had the company been incorporated as agreed, the value of the stock as of that date would have been the measure of

damage, had it not been issued to respondent; and, had the stock been worth $1 per share, respondent's damage would have been $25,000, which amount he would probably have sought to recover. The company not having been organized as agreed, the question is: Does the evidence sustain the judgment? We do not undertake to state what the measure of damage was. We simply conclude that we cannot arbitrarily say, nor could the trial court arbitrarily say, that it was $500; and the evidence, as we pointed out in the original opinion, does not sustain the judgment of $300 rendered by the trial court.

Counsel for petitioner contends that in our former opinion we held that the judgment of the court should be reversed because the reason given therefor was not the right one, and our attention is called to several cases from foreign jurisdictions holding that if the judgment is right, though the wrong reason is given therefor, it should be reversed. There can be no doubt as to the rule of law that a judgment which is right will not be reversed merely because a wrong reason is given therefor, and we need not seek authority outside of our own jurisdiction to sustain this rule. *Jumbo Mining Co. v. District Court,* 28 Nev. 264, 81 Pac. 154. But we do not think we conceded that the judgment was right. In the concluding paragraph of the opinion we held that "the evidence does not sustain the judgment."

The petition for a rehearing is denied.

DUCKER, J., not having been a member of the court when this case was originally disposed of, did not participate herein.

ON COSTS

By the Court, COLEMAN, C. J.:

Respondent has appealed from the ruling of the clerk upon the cost bill filed by appellant herein.

1. It is first contended that appellant can recover no costs, because no order was made as to costs in the opinion reversing the judgment of the lower court. Section 5381 of the Revised Laws provides that when this court, in reversing a judgment, makes no order as

to costs, costs shall be allowed to the party obtaining any relief. The judgment for $300 having been reversed, it follows as a matter of course that costs are recoverable by appellant. Dixon v. Southern Pacific Co., 42 Nev. 73, 179 Pac. 382.

2. The next objection is to the ruling of the clerk upon the amount allowed appellant for copying the transcript on appeal. Rule VI of the court fixes the amount to be allowed per folio for typewritten copy of the transcript. The clerk, in making his ruling, inadvertently included in his calculation, as a basis for his ruling, the original papers on file and included in the record. We think the rule contemplates that no allowance shall be made for originals, but only for papers actually copied. We are of the opinion that only $78.75 should be allowed for copying the transcript on appeal.

The third item complained of is the cost of typing appellant's opening brief. This was purely a matter of calculation, and we do not find that the clerk erred in reaching his conclusion.

3. The last objection concerns the item for cash paid the surety company by appellant as premiums on the appeal and stay bond; it being contended that they are not a proper item of costs. Section 699 of the Revised Laws expressly makes such items proper elements of costs to be collected by the party who has been compelled to incur such liability.

Except as modified as to the item mentioned relative to copying the transcript on appeal, the ruling of the clerk is sustained.

DUCKER, J., did not participate.