No. 2572

## IN RE PEDROLI'S ESTATE

## PEDROLI *v.* SCOTT

December 5, 1923.            221 Pac. 241.

1. EXECUTORS AND ADMINISTRATORS — REMOVED ADMINISTRATOR WITHOUT RIGHT OF POSSESSION PENDING APPEAL WHICH WAS INEFFECTIVE AB INITIO.

Where an administrator appealed from an order removing him and appointing deceased's wife in his place, and the wife qualified, but the appeal was dismissed as ineffective ab initio, for lack of right to appeal, he had no right of possession of estate assets pending outcome of the appeal and after the time for appeal was over.

2. EXECUTORS AND ADMINISTRATORS—"EXECUTOR DE SON TORT" AT COMMON LAW DEFINED.

At common law one who intermeddled with the goods of a deceased person was an executor de son tort.

3. EXECUTORS AND ADMINISTRATORS—BENEFICIAL EXPENDITURES BY ADMINISTRATOR ACTING WRONGFULLY HELD PROPERLY APPROVED.

Where an administrator, who appealed from a court order removing him and appointing the wife of deceased, wrongfully refused to turn over the assets to the wife, the court nevertheless properly allowed expenses incurred by him, whether paid or not, where they were necessary to protect the estate.

4. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR REFUSING TO SURRENDER POSSESSION HELD PROTECTED IN ALL ACTS RIGHTFUL EXECUTOR MIGHT HAVE DONE.

An administrator refusing to surrender possession after removal is liable for all the assets of the estate which came into his own hands and should be protected in all his acts, not for his own benefit, which a rightful executor might have done.

APPEAL from Sixth Judicial District Court, Humboldt County; *James A. Callahan,* Judge.

Application of Joseph Scott, former administrator of the estate of Charles Pedroli, deceased, for allowance of accounts. From an order approving and allowing certain obligations and expenditures, and from an order denying a new trial, Louise Pedroli, administratrix, appeals. **Affirmed. Petition for rehearing denied.**

*Warren & Hawkins,* for Appellant:

When administrator is removed his control of estate ends. In Re Pedroli's Estate, 44 Nev. 258.

Scott had no authority to use funds of estate for any purpose after he was removed, and should be made to

repay all sums so used. Edney v. Baum, 73 N. W. 454; More v. More, 59 Pac. 823. A removed executor is as completely severed from estate as if he were dead. Taylor v. Savage, 11 How. 282.

At time of appeal Scott had ceased to exist as administrator, no longer represented the estate in any capacity, and estate had no interest in judgment from which he, as administrator, appealed. In Re Pedroli's Estate, supra.

Nevada has no statute requiring appointment of special administrator when letters of former administrator have been revoked. The court must appoint wife, if she is competent, and revoke letters of administrator, upon her petition. Rev. Laws, 5907, 5908. Even where circumstances require appointment of special administrator, judge need not appoint one. Rev. Laws, 5932. We have no such mandatory provision as has California. In Re Moore, 24 Pac. 846, does not apply.

No person who legally comes into possession of assets of estate can be held to be executor de son tort. 24 C. J. 1213. Coyle's Estate, 43 Pa. Co. 290; 11 R. C. L. 456. But even if he could, he would not be entitled to bind estate by contract subsequent to removal. 11 R. C. L. 463; Linderink v. Sawyer, 92 Neb. 587.

True representative is bound by acts of executor de son tort which are lawful and which true representative would be bound to perform in due course of administration. 24 C. J. 1218; Buckley v. Barber, 6 Exch. (Eng.) 164; Burke v. Huff, 30 S. E. 546.

Payment of debts of decedent, if made by executor de son tort, is only act binding on true representative. Note 31, A. & E. Ann. Cas. 264.

*Campbell & Robins,* for Respondent:

Pending Scott's appeal from order revoking his letters, proceedings were stayed, and Louise Pedroli's rights were suspended. A special administrator should then have been appointed. In Re Moore, 24 Pac. 846; In Re Chadbourne's Estate, 112 Pac. 472; More v. More, 59 Pac. 823.

Pending attempted appeal, Scott was in position analogous to executor de son tort. Such officer, under our practice, is not recognized. Pryor v. Downey, 50 Cal. 400. But principles of law applicable to him are same whether he be treated as executor de son tort or not, though we do not admit, even if common law were applicable, he is executor de son tort. One taking under color of title in good faith is not executor of his own wrong, even though his claim might not be substantiated. 3 Alexander on Wills, 1260.

The only question to be decided is: Should Scott receive credit for money he expended to preserve the estate? The lower court found expenditures necessary and allowed and approved them because they were beneficial to estate. Stat. 43 Eliz., c. 8.

An executor de son tort may prove, in mitigation of damages, payments made by him in rightful course of administration, as they were not prejudicial to administrator de jure. Slate v. Henkle, 78 Pac. 325, quoting Woerner on Administration (2d ed.), 125; 3 Alexander on Wills, pars. 1273–1275.

By the Court, COLEMAN, J.:

The facts of this matter are these: On January 12, 1919, one Charles Pedroli, a resident of Humboldt County, died intestate, leaving real and personal estate in said county. Joseph Scott, the respondent, applied to the district court for letters of administration and in due time was appointed administrator, whereupon he took possession of the assets of the estate. Thereafter Louise Pedroli, claiming to be the common-law wife of the deceased, made application for the removal of Scott as administrator and that she be appointed in his place to administer upon the estate. On March 30, 1920, after full hearing upon such application, the court made an order removing Joseph Scott as administrator and appointing Louise Pedroli administratrix thereof. Scott, as administrator, undertook to appeal from said order of removal to this court, giving the proper notice thereof and an undertaking on appeal. However, no

stay pending the disposition of the matter on appeal was obtained. Louise Pedroli qualified as administratrix and made a motion to dismiss the appeal taken by Scott, which was sustained. In Re Pedroli's Estate, 44 Nev. 258, 193 Pac. 852. Upon the qualification of Mrs. Pedroli as administratrix she demanded of Scott the possession of all the assets of the estate, which he refused to deliver to her. On June 8, 1920, Scott filed what he designated as his "First Account" as administrator, and on March 15, 1921, he filed what he designated as his "Second Account" as such administrator. He contends that after his appeal was finally disposed of he delivered to Louise Pedroli, on or about the 15th of March, 1921, all of the property of the estate.

Upon the hearing upon said two accounts the court approved and allowed certain obligations contracted and expenditures made by Scott as administrator after the entry of the order removing him as administrator. Louise Pedroli, the administratrix, has appealed from such order, and from an order denying a motion for a new trial.

The contention of counsel for appellant is stated in his brief as follows:

"Scott acquired his representative capacity and right to administer the estate solely by virtue of the letters issued to him as administrator; these letters were by the court revoked and canceled, and when so revoked all rights and powers vested in Scott, by reason of the issuance of the letters, ceased by reason of the judgment revoking the letters. When the letters of administration were revoked, as they were in Scott's case, March 30, 1920, he ceased to exist in his official capacity. On April 7 letters were issued to this appellant, and from that time until the present she has been the only person authorized by law to spend any of the assets of this estate or to contract any obligations for which it should pay."

Thus it will be seen that it is conceded that Scott originally acquired possession of the estate legally and so held it until the entry of the order of removal. It is

centended on behalf of respondent that Louise Pedroli, as administratrix, was not entitled to the possession of the property of the estate pending the appeal, and that respondent could not legally or safely surrender possession to her, and that the only person who would be entitled thereto pending such appeal would be a special administrator, and that none such was appointed or qualified. To sustain this contention our attention is directed to In Re Moore's Estate, 86 Cal. 72, 24 Pac. 846; More v. More, 127 Cal. 460, 59 Pac. 823; Estate of Chadbourne, 14 Cal. App. 481, 112 Pac. 472.

It is said on behalf of appellant that we have no such statute as that relied upon by the court in the decisions just cited, and, furthermore, that in those cases an actual right of appeal was availed of, whereas there was no right of appeal availed of in this estate, as was decided In Re Pedroli's Estate, supra, and therefore the retention of the property by Scott was not pursuant to lawful authority, and hence he can be credited with no obligation contracted subsequent to the order of removal.

I. Having held on the former appeal that Scott had no right of appeal as administrator (In Re Pedroli's Estate, supra), and none other having been taken, we are clearly of the opinion that Scott wrongfully held possession of the estate after the time had expired within which an appeal might rightfully have been taken. This conclusion cannot successfully be questioned, for it is self-evident that one who has no right cannot invest himself with one by undertaking to do that which he is not authorized to do, but which some one else may do. That was the situation which presented itself by Scott's attempted appeal. We held that it was of no effect ab initio. Such is clearly the correct rule. Edney v. Baum, 53 Neb. 116, 73 N. W. 454; Bank v. Stanton, 116 Mass. 435; Taylor v. Savage, 1 How. 282, 11 L. Ed. 132; More v. More, 127 Cal. 460, 59 Pac. 823; Union Savings & Trust Co. v. Eddingfield, (Ind. App.) 134 N. E. 497.

Having reached the above conclusion, but one question remains: Can Scott be credited with the obligations

incurred and the expenditures made by him after the entry of the order of removal and prior to the final disposition of the former appeal by this court?

Counsel for respondent asserts that Scott, during the pendency of the appeal, occupied a position analogous to that of an executor de son tort at common law. It was said in the oral argument that there can be no such thing in Nevada as an executor de son tort. Both counsel seem to have proceeded upon that theory, but no argument is made to support the statement. Our attention is not called to any statute abolishing the common-law rule relative to the liability of one as such, as had been done in some states, and we do not decide as to its existence. We observe, however, that some courts have held that it is repugnant to the letter and spirit of the law of the state. 2 Woerner, Law of Administration (3d ed.), sec. 198. Proceeding upon the assumption that there can be no such thing under our practice as an executor de son tort, it naturally follows that the respondent must be held liable as a wrongdoer. This being true, the question is solely as to the measure of his liability, and naturally we must look for a standard by which to measure it.

In considering the contention of appellant we must bear in mind the fact that the respondent came into the possession of the estate in question as an officer of the court having jurisdiction of the settlement of the estates of deceased persons. He contends that his action at all times has been in good faith, and such must have been the conclusion of the lower court.

2. It is the general rule in actions at law that one may recover such damage resulting from the tort of another as may compensate him for the damage sustained, and at common law one who intermeddled with the goods of a deceased person was held to be an executor de son tort. Mr. Schouler in his work on Executors and Administrators, at section 187, says:

"The legal consequence of becoming what was styled an executor de son tort was to render one's self liable, not only to an action by the rightful executor or

administrator, but also so as to be sued as executor by a creditor of the deceased, or by a legatee; for, as Lord Cottenham observes, an executor de son tort has all the liabilities, though none of the privileges, that belong to the character of executor."

It is said in 1 Williams on Executors (6 Am. Ed.) at page 305:

"When a man has so acted as to become in law an executor de son tort, he thereby renders himself liable, not only to an action by the rightful executor or administrator, but also to be sued as executor by a creditor of the deceased, or by a legatee; for an executor de son tort has all the liabilities, though none of the privileges that belong to the character of executor."

Mr. Woerner in his American Law of Administration (2d ed.), sec. 194, says:

"The liability of an executor de son tort does not, at common law, extend beyond the goods which he has administered; for while he is not allowed, by his own wrongful act, to acquire any benefit, yet he is protected, if he pleads properly, for all acts other than those for his own advantage, which a rightful executor might do."

Such is the well-established rule. 11 Am. & Eng. Ency. Law (2d ed.), 1351; 11 R. C. L. p. 461; 24 C. J. sec. 2933. Such was the rule established by statute (43 Eliz. c. 8) 4 Bacon's Abr. p. 28.

3, 4. We think the respondent should be liable for all of the assets of the estate which came into his hands and that he should be protected in all of his acts (not for his own benefit) which a rightful executor might have done. It is very evident that it was upon this theory that the lower court proceeded. We think this rule is the correct one and that it is in consonance with reason and justice and the common law, because by adopting it the estate is not made to suffer, nor does the respondent profit as a result of his own wrong. If the respondent had turned over to the appellant the estate upon her qualification, the estate would have been liable for all necessary expenses incurred in its preservation

and protection, plus her commission. Why should it not pay the expenses incurred by the respondent in preserving it? In what way has it been damaged? Counsel says appellant might have handled the estate at much greater savings than did the respondent. Perhaps she might; but, on the other hand, she might have incurred much greater expense in handling it. But this is pure speculation. The lower court found that the indebtedness so incurred was necessary and proper for the protection of the estate, and, as appellant did not bring up the evidence, the presumption is conclusive in favor of the findings so made.

Our attention is directed to the case of Slate v. Henkle, 45 Or. 430, 78 Pac. 325, as sustaining the conclusion we have reached. It reviewed the authorities as to an executor de son tort, and quotes approvingly as follows from Rutherford v. Thompson, 14 Or. 236, 12 Pac. 382:

"The person who intermeddles with the goods of the deceased is now only responsible to answer in an action to the rightful executor or administrator. And, whether we consider the intermeddler as an executor de son tort, or as a wrongdoer, the liability to respond to the rightful executor or administrator is the same, and unaffected, and the law unchanged. The fiction of office may be gone, but the unauthorized act of intermeddling remains, to be dealt with judicially, according to the principles of right and justice, as applied by the law in such cases. Now, from the fact that the intermeddler with the goods of a deceased is only liable to respond to the rightful executor or administrator for the value of the goods, etc., it by no means follows, if what he did was of benefit and not injury to the estate, as the payment of funeral expenses, or debts of the deceased, or charges such as the rightful representative might have been compelled to pay, he would not be allowed to show the same in mitigation of damages in an action of trover, instituted by such executor or administrator. In thus compelling him to account with only the rightful representative, the statute does not purport or undertake to

deprive him of any proper or legitimate defense. The title of executor de son tort may be repudiated, but the justice of the law will remain, to distinguish between acts which are beneficial and those which are injurious to an estate."

But it is said that the lower court gave credit for certain items of expense incurred by the respondent which he had not paid and hence should not have been allowed. It is said that not an authority can be found holding that such items should be allowed. It can as well be said that not one has been cited holding the contrary. We think, however, the case of Slate v. Henkle, supra, is contrary to appellant's contention. It was there held that the item of $100 claimed by Slate should have been allowed if the services were rendered in preserving or caring for the property of the estate. In any event the estate got the benefit of the articles enumerated and should pay for them. There is no more reason for allowing credit for things actually paid for and which benefited the estate than for those which were not paid for, if they benefited the estate.

Another suggestion is made by counsel for appellant, but it goes rather to a matter of policy than to a question of law, and we decline to consider it.

Perceiving no prejudicial error, the order and judgment are affirmed.

### ON PETITION FOR REHEARING

April 14, 1924.

By the Court, COLEMAN, J.:

A lengthy petition for a rehearing has been filed. It urges the granting of a rehearing upon several grounds. So far as the argument advanced which goes to support the contention that we erred in our ruling upon the matters presented and considered originally, we wish simply to say that we are entirely satisfied with our former disposition of them.

We may observe that the petition urges two additional theories why we should grant a rehearing, one of which is antagonistic to that urged in the original brief. We

could dispose of both of them upon the ground that a point urged for the first time in a petition for a rehearing will not be considered. Nelson v. Smith, 42 Nev. 302, 178 Pac. 625.

As to the ground which is antagonistic to the original theory, it may be said it is a well-established rule that when a case has been tried upon one theory a party will not be permitted to shift his position and urge a theory diametrically opposed to the one originally relied upon.

The petition for rehearing is denied.