JOHNSON *v.* THE INTERNATIONAL OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL UNION No. 971, Et Al.

No. 2969

December 5, 1932.                    16 P. (2d) 658.

*Thatcher & Woodburn* and *John Donovan*, for Appellants:

*Frame & Raffetto*, for Respondent:

## OPINION

By the Court, COLEMAN, C. J.:

This is the second appeal in this case; the opinion on the former appeal disposes of the question of the liability of the appearing defendants (52 Nev. 400, 288. P. 170), and the only question involved on this appeal is, as stated in appellants' opening brief, and on the oral argument, "whether plaintiff was damaged and if so to what extent."

The learned trial judge filed a written opinion in this case which we think clearly and fully disposes of the question involved, and we hereby adopt the following portion thereof, as a portion of the opinion of this court:

"The law of this case is settled by the opinion of the Supreme Court of the State and, under that decision, the plaintiff is entitled to the judgment and decree of this court directing and compelling the defendants to reinstate the plaintiff as a member of the Brotherhood and of Local No. 971.

"The question to be determined by this Court at the present time is the amount of damages that should be allowed the plaintiff by reason of the wrongful act of the defendants in expelling him from the Union. I think it is a matter of congratulation to all right thinking men that Reno is a union town. It seems to me that even with the advantage of the Union the laboring men have sufficient difficulty in obtaining a livelihood even in a place like Reno.

"If we are to accept the testimony of the witnesses for the defendants, the average wages earned in Reno, which is considered to be a ninety per cent. union town, by members of the Carpenters' Union is only $1200 a year. The testimony of the plaintiff and the plaintiff's witnesses is to the effect that $2000 is the amount that they were able to earn and the amount that the plaintiff claims he would have been able to have earned had it not been for his expulsion from the Union.

"It is the opinion of the Court that the estimate made by the witnesses for the defendants is too small, but the Court is also of the opinion that the estimate made by the plaintiff and his witnesses is too large. According to the evidence there are only 234 working days in the year under union rules, and we are dealing with the proposition that has to do wholly with the Union. At the rate of $10 a day, which is the Union wage rate, a carpenter employed every day simply as a journeyman could make only $2,340. When we take into consideration the number of months in the winter time when work is hard to find, the Court is of the opinion that the estimate made by the plaintiff and his witnesses is rather large.

"There was a line of testimony upon which the Court

can base its decision and take the decision outside of the realm of mere speculation, and that testimony was the testimony given by certain of the witnesses as to the number of carpenters who worked practically all the time, the number that worked eighty-five per cent. of the time, the number that worked seventy per cent. of the time, the number that worked sixty per cent. of the time, the number that worked forty per cent. of the time, and the number that worked twenty-five per cent. of the time. Striking an average on that the Court is of the opinion that a person such as the evidence shows Mr. Johnson to have been, a man with a family and anxious to work and seeking employment, would probably make in the neighborhood of $1600 a year during the years that he was expelled from the Union. Then, commencing with the first of January, the forepart of January, 1927, his evidence shows that he made between $500 and $600 that year; in 1928, between $400 and $500. In 1929 the evidence shows he had some contract work and made about $1,000, and in 1930 between $400 and $500. Assuming that he made $1600 a year, and taking the amount that he made at his largest figure in the four years and two months covered by the time in the complaint and supplemental complaint that he was laboring under the disability of having been expelled from the Union he lost, according to the Court's figures $4000."

Counsel for appellant insists that there was no evidence which enabled the court to fix $4,000 as the measure of damages sustained by the plaintiff; that it arrived at the amount by guess, which this court condemned in Richards v. Vermilyea, 42 Nev. 294, 175 P. 188, 180 P. 121. In that case there was absolutely no basis for the conclusion reached by the court in fixing the amount of damages; it was purely guesswork. Such is not the fact in the instant case.

■ In the majority of damage suits there is no way of showing the exact damages a party has sustained, but there must be a basis for the fixing of the amount.

In a case like this we think the same rule should apply as in a personal injury case, a fair recompense for the loss of what plaintiff would otherwise have earned in his calling, and has been deprived of earning by the wrongful act complained of. We approve the statement in 17 C. J. 844, as follows: "It is obvious that in many cases the amount of damages is not susceptible of exact, pecuniary admeasurement, but must rest largely in the discretion of the jury, and the jury are entitled to consider the evidence in connection with their own knowledge, observation and experience."

■■ We think there is substantial evidence in the record to sustain the findings and judgment, and the order denying the motion for a new trial; hence, pursuant to a long line of authorities, the judgment must be affirmed. Butzbach v. Siri et al., 53 Nev. 453, 5 P.(2d) 533.

Judgment affirmed.

DUCKER, J.: I concur.

SANDERS, J., dissenting:

The law of this case was settled on the former appeal. The opinion and decision of the trial court adheres closely to the law and seems to have been prepared with assiduous care to award plaintiff only such damages as were the direct and proximate result of his unlawful expulsion as a member of the defendant Local Union No. 971.

After repeated examinations of the record, I cannot affirm the judgment deducible from the trial court's decision. No intelligent opinion can be had of the judgment without first reviewing the facts out of which the case arose. It appears that the plaintiff became a member of Local Union No. 971, hereinafter referred to as the Local, in March, 1923. In July, 1924, the plaintiff was elected as the business agent and delegate to represent the Local in the Builders' and Trades Council of Washoe County, an organization composed of affiliated

union crafts in that locality. On that date, to wit, July 1, 1924, the plaintiff was elected to the important office of business agent of said Builders' and Trades Council. In June, 1926, the plaintiff was defeated as a delegate to represent the Local in the Builders' and Trades Council. At a regular meeting of the Local held on September 13, 1926, the plaintiff, in the presence of two members present, gave utterance to certain intemperate and bitter language to show his attitude and disposition toward the Local, its officers and members. The language was as follows: "Why in hell don't they change the name of the S—— of a B—— of an organization from the United Brotherhood of Carpenters and Joiners of America to the Contractors and Petty Politicians Associations?"

In consequence of the plaintiff's utterance a motion in the form of a resolution was made at this meeting for plaintiff's expulsion as a member of the Local for trying to create dissention and working against the harmony of the Brotherhood. The plaintiff openly admitted that a part of the language attributed to him was true, but then and there openly demanded that he be charged and tried in the mode and manner as provided in section 54 of the constitution of the Local for the expulsion of members. In response to his demand, the chairman of the meeting ruled that the member having admitted that a part of the charge preferred against him was true, a trial was unnecessary under the constitution of the Local. Whereupon the motion was put to a rising vote of the members present, who numbered 42 or 45, of a scattered membership of about 130. The motion carried by a vote of 36 for and 5 against expulsion. Notwithstanding the vote of expulsion, the plaintiff continued to hold the office of business agent of the Builders' and Trades Council up to January 25, 1927, showing that his standing as a union man was not affected by his expulsion. On January 25, 1927, the plaintiff voluntarily declined to stand for reelection to the office, giving as his reasons therefor that under the circumstances it would be

for the best interests of the labor movement in that locality that he should not continue to hold the office of business agent of the several crafts affiliated with the council. In August, 1927, the plaintiff filed a complaint in the court below, and in September, 1927, filed a lengthy amended complaint, against the several defendants, demanding as damages for his alleged wrongful, willful, malicious, and unlawful expulsion from the Local the sum of $100,000 actual damages and in addition the sum of $100,000 punitive damages. It was ordered, adjudged, and decreed that the plaintiff have and recover from the defendants the sum of $4,000 actual damages.

The appeal is divided into two parts; one, the appeal from the joint judgment for $4,000, and the other from an order denying the appealing defendants' motion for a new trial. I note that the defendant International Brotherhood of Carpenters and Joiners of America is not a party to the appeal, presumably for the reason that it does not appear that it was ever served with summons or appeared in the action. The defendant Local and the individual defendants, in their appeal from the judgment, insist that the evidence is insufficient to support the decision of the trial court and its judgment is against law. I am of opinion that the judgment is against law for several reasons; one, the defendant Local is a voluntary unincorporated association, sued in its common or local name. The general rule of the common law that a voluntary unincorporated association cannot be sued in its common name is recognized in Branson v. Industrial Workers of the World, 30 Nev. 270, 95 P. 354. In that case an injunction against the individual members of the organization was affirmed upon the theory that they were sued as representatives of the entire membership of the organization, which was numerous and scattered, but not so in the case at bar. The individual defendants are not sued as representatives of the entire membership of the Local, but in their capacity as individual members of the Local. Therefore,

a judgment could not be rendered against the Local merely by name. The judgment as to the Local is obviously coram non judice, and should be vacated as such. Maclay Co. v. Meads, 14 Cal. App. 363, 112 P. 195, 113 P. 364.

Whether the judgment against the individuals named as defendants is valid and legal presents a different question. The complaint is only sufficient against them as members sued individually. The complaint charges that the individual defendants as members of the Local participated in the plaintiff's expulsion, which was contrary to common right, a high-handed, arbitrary proceeding equivalent to mob law, and contrary to due course of procedure provided in the constitution and laws of the Local. The trial court's decision and findings refute the charge. The court considered that the plaintiff was largely responsible for his expulsion because of the vituperate attack made by him on the Local and its officers. While the court considered that the members present acted hastily in voting the expulsion of the plaintiff, nevertheless his expulsion was contrary to and in violation of the procedure provided in the constitution and laws of the Local for the expulsion of a member and that the plaintiff was entitled to recover such damages as were the direct and proximate result of his unlawful expulsion. It does not, however, necessarily follow that the court was authorized to render a judgment against the sixteen individual members for the damages occasioned by the act of the majority present in voting for the resolution of expulsion of the plaintiff. Why the sixteen individual defendants, as members of the Local, should have been selected and singled out by the plaintiff in his complaint as being responsible for his expulsion, is a matter of inference and conjecture. No reason appears why the particular individual members should be held liable for the plaintiff's damage any more than the other members constituting the majority who voted for the plaintiff's expulsion. There is no evidence in the record to show

that the individual defendants as members of the Local acted in bad faith. On the contrary, in the absence of proof to show that they did so act, the presumption is that the expulsion of the plaintiff was an error of judgment merely or the misinterpretation of the law provided in the constitution of the Local for the expulsion of a member. Furthermore, the judgment in form makes the five voting against the resolution equally liable with the sixteen who joined with the majority in voting the expulsion for the damage occasioned by the plaintiff's unlawful expulsion, as well as the entire membership of the Local.

The result of my consideration of the entire record is that there was no evidence submitted to the court upon which it could possibly and properly find and adjudge that the legal wrong done the plaintiff was the direct and proximate result of the sixteen individual defendants' participation in the expulsion of the plaintiff as a member of the Local. In a case arising, as this, from internal disputes and discords in a labor organization, it is of far higher importance that this court should preserve inviolate the fundamental limitations in respect to jurisdiction, even though it be considered that an expelled member had a cause of action for damages and reinstatement as a member.

Entertaining these views, I decline to affirm the judgment.

### On Petition for Rehearing

January 31, 1933.                    18 P.(2d) 448.

## OPINION

By the Court, COLEMAN, J.:

Appellants have filed a petition for a rehearing, in which they contend that we reached the wrong conclusion on the question of damages, and now urge for the first time other points.

■ In the petition for a rehearing they state:

"On page 14 of appellant's opening brief appears the following:

" 'An examination of the Assignments of Error will reveal that the case resolves itself into the following issue:

" 'I.  Did plaintiff allege and prove such actual damages because of his expulsion from the Union as to entitle him to a judgment for Four Thousand Dollars ($4,000.00) ?'

"While it is true that this was the main issue presented to the Court, there were certain elements making up this issue, one of which was the following:

"Was the plaintiff's expulsion from the Union the direct and proximate result of the acts of the sixteen individual defendants?

"We did not devote much attention to this fact either in our opening brief, reply brief or upon the oral argument, particularly because of the Court's ruling in the former case."

We think this is a conclusive admission that we correctly stated in the former opinion that the only question involved was one of damages.

We have further considered that question and are of the opinion that our former conclusion must stand.

■ We have repeatedly held that a point urged for the first time on petition for rehearing will not be considered.  Nelson v. Smith, 42 Nev. 302, 176 P. 261, 178

P. 625; In Re Forney's Estate, 43 Nev. 227, 184 P. 206, 186 P. 678, 24 A. L. R. 553; In Re Pedroli's Estate, 47 Nev. 313, 221 P. 241, 224 P. 807, 31 A. L. R. 841; In Re Howard's Estate, 48 Nev. 106, 232 P. 783; Carroll v. Carroll, 51 Nev. 188, 272 P. 3; Blankenship v. Blankenship, 52 Nev. 48, 280 P. 97, 63 A. L. R. 1127.

The petition for rehearing is denied.

DUCKER, J.: I concur.

SANDERS, C. J.: I dissent.