[No. 2299]

## J. P. NELSON and J. H. COOKE, Respondents, *v.* CHRIS SMITH and JAMES SPARGUER, Appellants.

[176 Pac. 261; 178 Pac. 625]

1. APPEAL AND ERROR—PROCEEDINGS—TIME FOR TAKING APPEAL.

An appeal from a judgment taken more than nineteen months after rendition of judgment will be dismissed, under Rev. Laws, 5329.

2. APPEAL AND ERROR—APPEAL FROM ORDER DENYING NEW TRIAL—"ORDER MADE AND ENTERED."

An order refusing or granting a motion for a new trial is made and entered, within Rev. Laws, 5329, requiring an appeal from such order to be taken within sixty days after the order has been "made and entered in the case," at the time the order is entered in the minutes of the court, and not at the date of filing of a decision upon the merits of the motion.

3. APPEAL AND ERROR—REVIEW—RULING UPON CONFLICTING TESTIMONY.

Court's refusal to bar an attorney from appearing for plaintiffs on ground that he had been previously hired by defendants, where based upon conflicting testimony on question of fact as to whether he was so employed, will not be disturbed by the supreme court.

4. MINES AND MINERALS—PUBLIC MINERAL LANDS—VALIDITY OF LOCATION.

Mining claim location which is invalid under act of Congress, May 10, 1872, secs. 2, 5 (U. S. Comp. St. 1916, secs. 4615, 4620), is also invalid under Rev. Laws, 2422.

5. MINES AND MINERALS—PUBLIC MINERAL LANDS—VALIDITY OF LOCATION.

Where public mineral land is open to location at the time a claim is initiated, the location is valid, though the land is excess ground within staked boundaries of another claim, and though persons initiating claim had knowledge thereof.

6. MINES AND MINERALS—PUBLIC MINERAL LANDS—ADVERSE POSSESSION.

Every competent locator has the right to initiate a lawful claim to unoccupied public land by a peaceable adverse entry upon it while it is in the possession of those who have no superior right to acquire title or hold possession.

7. MINES AND MINERALS—LOCATION—EXCESSIVE CLAIM.

Generally, where a claim is excessive in length, the claim is valid if the error is innocently made, but the excess is void.

8. PLEADING—INCONSISTENT CAUSES OF ACTION.

The rule that inconsistent causes of action cannot be pleaded is based upon the theory that one or the other must be false, and that pleader ought to know which is true and which is false, and should be compelled to choose between them.

9. PLEADING—INCONSISTENT DEFENSES.

A party may plead inconsistent defenses provided they are not so incompatible as to render either one or the other false.

10. PLEADING—COMPELLING ELECTION—INCONSISTENT CLAIMS.

Where there was no inconsistency in the evidence offered in suport of validity of two locations pleaded by plaintiffs, the court properly refused to compel them to elect.

11. MINES AND MINERALS—"CLAIM JUMPING."

The location on ground, knowing it to be excess ground, within the staked boundaries of another claim initiated prior thereto, because law governing manner of making location had not been complied with, so that location covers the workings of the prior locators, is what in mining circles is known as "claim jumping."

12. MINES AND MINERALS — PUBLIC MINERAL LAND — LOCATION — RIGHT OF POSSESSION.

Where there is no valid location, there can be no right of possession under it.

13. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.

Where there are sufficient findings on issues made in the case to support the judgment, it is immaterial that there is no finding, or an erroneous finding on some other issue, which, if made, or differently made, would not compel any different conclusion from that reached by the findings which were actually made.

14. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.

In action involving validity of location on public mineral land, an erroneous instruction as to defendants' right to locate on the land in question does not justify a reversal where, eliminating the finding made on such instruction and the issue to be determined thereby, plaintiffs' right to location was determined by finding on other issue not affected by the instruction.

15. APPEAL AND ERROR—REVIEW—VERDICT.

A verdict based upon conflicting evidence will not be disturbed by the supreme court.

## ON PETITION FOR REHEARING

1. APPEAL AND ERROR — HARMLESS ERROR — CAUSES IN EQUITY — INSTRUCTIONS.

In equity case, verdict of jury is merely advisory, and in such cases supreme court will not review errors assigned to instructions given to jury.

2. APPEAL AND ERROR—MATTERS REVIEWABLE—REHEARING.

A point not urged in supreme court upon original hearing cannot be considered on petition for rehearing.

APPEAL from Eighth Judicial District Court, Mineral County; *J. Emmett Walsh,* Judge.

Action by J. P. Nelson and another against Chris

Smith and another. From judgment for plaintiffs, and from order denying new trial, defendants appeal. Appeal from judgment dismissed, and order denying new trial affirmed. On petition for rehearing, **petition denied.**

*Wm. Forman* and *T. L. Foley*, for Appellants:

There is no merit in the motion to dismiss, the appeal having been taken within the statutory time. Respondents concede that the notice of appeal was filed and served within sixty days after the order was made and entered in the minutes of the court. Rev. Laws, 5329, 5356; Clossen v. Thomas, 164 Cal. 196, 128 Pac. 329.

The court erred in permitting certain attorneys to appear and participate in the trial for the plaintiffs, said attorneys having been previously hired to represent the defendants. While the payment of a fee is the most usual and most weighty item of evidence to establish the relation of attorney and client, it is by no means indispensable. The essential feature of the professional relationship is the fact of employment to do something in the client's behalf. There must be an agreement, express or implied, for compensation, but whether payment is made in part or in whole, by retainer in advance, is immaterial. 2 R. C. L., p. 954. It has been held that the relation of attorney and client existed where a third party at the request of the client left an abstract with an attorney for examination, although no fee was paid. Eoff v. Irvine, 32 Am. St. Rep. 609; High on Injunctions, secs. 19, 72; 4 Cyc 920; Ann. Cas. 1912B, 212; Valentine v. Stewart, 15 Cal. 387; Hatch v. Fogarty, 40 How. Pr. 492; Wedekind v. Tuolumne W. Co., 74 Cal. 386; Lowell v. Gorman, 57 Am. St. Rep. 662. "Communications made to an attorney under the impression by the client that the attorney was acting as such are privileged whether the attorney understood or not that he was so acting." Aldeman v. People, 69 Am. Dec. 321; Denver Tramway v. Owens, 36 Pac. 854.

Where a mining claim is excessive in length, if the error is innocently made, the claim is valid, but the

excess is void. If the error is fraudulently made, the whole location is void. Costigan, Mining Law, p. 197; Lindley on Mines, sec. 362; Snyder on Mines, secs. 397, 398.

Where a lode location is excessive, and the area to which a locator is entitled can be determined by monuments following the calls for distances from the discovery contained in the notice of location, a subsequent locator may measure the ground, cast off and locate the excess. Lindley on Mines (3d Ed.), sec. 362; Atkins v. Hendree, 1 Idaho, 95; McPherson v. Julius, 95 N. W. 428; Flynn Group v. Murphy, 109 Pac. 851; Gardener v. Stanley Con. M. Co., 193 Fed. 517.

"Under the law, a locator should not be permitted to hold an excess of ground with a single location, and when the notice provides that his mining claim extends a certain number of feet in a certain direction from the discovery, subsequent locators may be governed by the statement in the notice and not by stakes that include within their boundary an excess of surface ground." Flynn Group M. Co. v. Murphy, supra; Nicholle v. L. & C. M. Co., 109 Pac. 846; Swanson v. Koeninger, 137 Pac. 891.

The statute allows the locator certain periods of time in which to mark his boundaries and do his work. "The court cannot become a locator for the mining claimant and do for him what he alone should do for himself. The most the court can do, where the lines are drawn inaccurately and irregularly, is to give the miner such rights as his imperfect location warrants under the statute." King v. Amy S. M. Co., 152 U. S. 228, 38 L. Ed. 422.

*Withers & Withers,* for Respondents:

The appeal should be dismissed, it not having been taken within the time prescribed by the statute. Rev. Laws, 5329. The intention of the legislature in enacting the statute must prevail over the literal sense. State v. Ross, 20 Nev. 61; In Re Primary Ballots, 33

Nev.. 125; State v. Hamilton, 33 Nev. 418; State v. Brodigan, 37 Nev. 245. An appeal not taken in time must be dismissed. 3 C. J. 370; Weinrich v. Porteous, 12 Nev. 102; Reinhart v. Company D, 23 Nev. 369; Central Trust Co. v. Holmes M. Co., 30 Nev. 437; Paroni v. Simonsen, 34 Nev. 26. Appeal is purely a matter of statutory right. Gaudette v. Glissan, 11 Nev. 184; Burbank v. Rivers, 20 Nev. 81; State v. Langan, 29 Nev. 459; Hoffman v. Owens, 31 Nev. 481; Coffin v. Coffin, 163 Pac. 731. Unless the statute has been complied with, the supreme court has no jurisdiction. State v. Preston, 30 Nev. 301; Rosenthal v. Rosenthal, 39 Nev. 74. The time for taking an appeal is jurisdictional and cannot be extended. 3 C. J., p. 1069, sec. 1077; 2 Ency. Pl. & Pr. 244; Dooling v. Moore, 20 Cal. 141; Williams v. Long, 130 Cal. 58; Lane v. Johnson, 156 Cal. 253; Lancel v. Postlethwaite, 156 Pac. 487; Camden Iron Works v. Sater, 223 Fed. 611. An extension cannot be made indirectly by repeating the order. 3 C. J., p. 1070, note 47.

The court did not err in permitting certain attorneys to appear for the plaintiffs. The matter was one, not of law but of fact. The facts proven fail to sustain the objection of appellants. There was simply an offer, which was neither expressly nor impliedly accepted. "There can be no valid executory contract unless there be a meeting of the minds of the respective parties upon its terms and conditions; they must assent to the same thing in the same sense." Hillyer v. Overman S. M. Co., 6 Nev. 51; Morrill v. Tehama C. M. & M. Co., 10 Nev. 125; State v. Noyes, 25 Nev. 31; 9 Cyc. 267; 2 Thornton on Attorneys, sec. 507, p. 888. An attorney is not disqualified because the adverse party had previously told him enough about the case to enable him to decide whether he would take it on the terms offered him. Hicks v. Drew, 117 Cal. 305; Messenger v. Murphy, 33 Wash. 353. The courts will not assume or presume that an attorney is guilty of unprofessional conduct. Lalance Mfg. Co. v. Haberman Mfg. Co., 93 Fed. 198.

Posting a notice does not segregate any ground or give the discoverer title to any specific ground. Its function and purpose is to secure to the discoverer, and to all subsequent locators, the right to make or perfect a location within the time prescribed by the statute, in accordance with his notice, liberally construed. McNamara v. Nash, 30 Nev. 114. The statute is permissive, not exclusive. Rev. Laws, 2422.

If the location, as afterwards monumented, departs from the calls of the original notice, it is not invalid as to the additional ground included, except as to intervening adverse rights. The statute does not require that the location certificate shall correspond with the notice or in any way refer to it. No location certificate is necessary if the facts therein required to be stated are proved aliunde. Ford v. Campbell, 29 Nev. 578; Gibson v. Hjul, 32 Nev. 370; Clark v. Mitchell, 35 Nev. 464; Indiana Nevada M. Co. v. Gold Hills M. Co., 35 Nev. 158; Zeres v. Vanina, 134 Fed. 615; Wailes v. Davies, 158 Fed. 667; Sturtevant v. Vogel, 197 Fed. 452.

A location is valid if there were no discovery where the notice was originally posted, but discovery has since been made elsewhere within the boundaries. Gibson v. Hjul, supra; Bonner v. Meikle, 82 Fed. 698; Tonopah & S. L. M. Co. v. Tonopah M. Co., 125 Fed. 414. A location is valid if sufficient work be done on it, though not done in the discovery shaft. If a locator has been in adverse possession of a mining claim for two years, and has made a discovery and done sufficient work, and has monumented his claim, it is valid against all the world. Rev. Laws, 4951.

If the essential acts have been performed before adverse rights accrue, the order in which they were performed is immaterial. Creede v. Uinta Tunnel Co., 196 U. S. 345; Patchen v. Keeley, 19 Nev. 415.

Where excessive area was not claimed with fraudulent intent, the universal and well-established rule is that the validity of the location is not thereby impaired, and when the locator's attention is called to the error he

may cast off the excess where he sees fit. 20 Am. & Eng. Ency. Law, 695; 27 Cyc. 561; Rose v. Richmond M. Co., 17 Nev. 25, 59–60; Richmond M. Co. v. Rose, 114 U. S. 576; McIntosh v. Price, 121 Fed. 716; Zimmerman v. Funchion, 161 Fed. 859; Waskey v. Hammer, 170 Fed. 31; Jones v. Wild Goose M. & T. Co., 177 Fed. 95; Stephens v. Wood, 39 Or. 441; Hanson v. Fletcher, 10 Utah, 271; Stemwinder M. Co. v. Emma and Last Chance Co., 21 Pac. 1040.

It is the policy of the law to recompense the discoverer of a vein for his discovery. It is recognized that prospectors and locators are usually men of little education, and notices drawn by them are to be liberally construed, to the end that their discoveries may not be taken from them and the benefits given to others who are not entitled to them and who are often unworthy. Lawson v. U. S. M. Co., 207 U. S. 1, 52 L. Ed. 75; Lindley on Mines, sec. 355; 27 Cyc. 565.

A state has no power to pass any statute affecting the location or sale of the public domain of the United States unless such authority be found in an act of Congress. The act of Congress gives to miners the power to adopt rules and regulations, and the statute is of no higher authority than the miners' rules. Butte City W. Co. v. Baker, 196 U. S. 119; Lindley on Mines, secs. 46, 76, 249.

If there is a variance between the calls in the notices and the markings on the ground, the markings control. Lindley on Mines, secs. 381, 383; 27 Cyc. 574; Weill v. Lucerne M. Co., 11 Nev. 200; Gleason v. Martin White Co., 13 Nev. 442; Smith v. Newell, 86 Fed. 56; Green v. Garvin, 10 Cal. App. 330; Copper Glove M. Co. v. Allman, 23 Utah, 410; Clark v. Mitchell, 35 Nev. 464; Cullacott v. Cash Co., 8 Colo. 179; Brady v. Husby, 21 Nev. 453; Book v. Justice M. Co., 58 Fed. 106.

By the Court, SANDERS, J.:

There are two appeals in this case included in the one notice taken by the defendants. One is from the judgment, and the other from the order denying the defendants' motion for a new trial.

Upon the case being called for argument in this court, counsel for respondents, upon notice previously given, moved the court to dismiss both appeals, upon the ground that neither had been taken within the time required by law.

Section 5329 of the Revised Laws provides, inter alia, that an appeal may be taken from a final judgment in an action within six months after the rendition of the judgment; that an appeal from an order refusing or granting a new trial may be taken within sixty days after the order has been made and entered in the case.

1. It affirmatively appears from the record that the judgment in this case was rendered on the 25th of November, 1915, and that the appeal therefrom was taken on the 9th of July, 1917, a period of more than nineteen months after the rendition of the judgment. The motion to dismiss the appeal from the judgment is therefore granted. Central T. Co. v. Holmes Co., 30 Nev. 437, 97 Pac. 390; Ward v. Silver Peak, 37 Nev. 470, 143 Pac. 119.

2. It also affirmatively appears from the record that the order refusing a new trial was made and entered in the minutes of the court on the 10th day of May, 1917. The appeal from the said order was taken on the 9th of July, 1917, within sixty days after the entry of the order in the minutes of the court. Clearly, the time for taking an appeal from an order refusing or granting a motion for a new trial begins to run from the date of the entry of the order in the minutes of the court, and not from the date of the filing of a decision upon the merits of the motion. The motion to dismiss the appeal from the order denying a new trial is denied.

This action was commenced in the district court of Mineral County for the double purpose of quieting the plaintiffs' title to a group of lode mining claims situate in the Bell mining district, described in the complaint as the Royal George group, consisting of the Royal George, Royal Georges Nos. 2, 3, 4, 5, 6, 7, 8, and the Royal George Protector, and to enjoin defendants from perfecting or attempting to perfect a mining location

upon and over the premises, or any part thereof, and
to restrain the defendants from mining or extract-
ing ore from the plaintiffs' discovery.   It developed,
however, from the subsequent pleadings, as well as
from the admission of counsel, that the real contro-
versy in the case relates to the possession, or right to
the possession, of 262 feet of valuable mining ground
included within the exterior boundaries of the plaintiffs'
alleged Royal George No. 4 and Royal George Protec-
tor locations, and the defendants' alleged superior right
thereto in virtue of their alleged Gilt Edge Fraction lode
mining claim.   The issues were submitted to a jury and
a general verdict returned in favor of the plaintiffs in
this language: "We, the jury, find the issues joined in
this case in favor of the plaintiffs."   The trial court evi-
dently considered this verdict, informal as it was, as
binding upon the court, and adopted the verdict as a
finding of fact without any further or additional find-
ings, and as conclusions of law the court found:

"That as against the defendants the plaintiffs are the
owners, in the possession, and entitled to the possession,
of all ground claimed by the defendants as their alleged
Gilt Edge Fraction lode mining claim, being the whole
thereof which is in conflict with and overlaps the plain-
tiffs' said Royal George No. 4 mining claim and Royal
George Protector mining claim, and that the defendants
have not, nor has either of them, any right, title, or
interest in or to any ground included within the exterior
boundaries of said Royal George No. 4 mining claim, or
said Royal George Protector lode mining claim, and that
their alleged Gilt Edge Fraction lode mining claim is
not a valid, subsisting lode mining location made upon
the unappropriated public domain of the United States,
and that the defendants acquired no rights whatever by
their asserted location of said alleged Gilt Edge Frac-
tion lode mining claim, and that all rights asserted by
the defendants in this action adverse to the plaintiffs
are wholly void and of no effect."

And further found that the plaintiffs were entitled to
the injunctive relief demanded by their complaint, and

ordered judgment and decree to be entered accordingly. Before proceeding further with the discussion we will dispose of a preliminary motion made by the appellants in the course of the trial.

3. Upon the calling of the case for trial in the district court, one of counsel for plaintiffs requested of the court that the name of George S. Green, Esq., be entered of record as attorney for plaintiffs. This request was met by a motion on the part of defendants' counsel for an order barring the said Green, or the firm of Mack & Green, of which he was then a member, from appearing as attorney for plaintiffs, upon the ground that said George S. Green and the said firm of Mack & Green had been hired previously to act as attorneys for the defendants in this cause. Evidence, both oral and documentary, was adduced in support of and against the granting of the motion. The court denied the motion. This ruling constitutes one of the principal assignments of error relied upon by the defendants in support of their motion for a new trial. The question being one purely of fact, and decided by the trial court upon conflicting. testimony, we are not authorized to disturb the ruling. Furthermore, we are not prepared to say that the court abused its discretion in denying the motion.

The purely legal questions involved in this appeal relate to the validity of lode mining claim locations under the act of Congress of May 10, 1872, c. 152, secs. 2, 5, 17, Stat. 91, 92 (U. S. Comp. St. 1916, secs. 4615, 4620), that provides, inter alia, that a mining claim "may equal, but shall not exceed, one thousand five hundred feet in length along the vein or lode." "The location must be distinctly marked on the ground, so that its boundaries can be readily traced."

4. The briefs are devoted largely to an able and extended discussion of the effect of our local law (Rev. Laws, 2422) upon a lode mining claim that as staked or monumented covers more ground than called for in the notice of location posted at the point of discovery, and includes more of the vein than allowed by the federal and state law. If the location by virtue of which the

plaintiffs claim title and right to the possession of the ground in dispute is invalid under the federal law, it must follow that it is also invalid under the local statute. The rights of the contestants must primarily be determined by the rules of law concerning the right of possession of mining claims under the act of Congress. In this connection it is well to give a connected statement of the facts concerning the locations in question:

First. *Royal George No. 4*—Nelson, one of the plaintiffs and respondents, located this claim on the 4th day of February, 1915. The evidence tends to show that the location, as was all of the other locations referred to in the complaint, was monumented without the aid of a compass or other instrument. It appears from the notice of location that the locator claimed 600 feet of the vein in a westerly direction and 900 feet in an easterly direction from the point of discovery.

Second. *Royal George Protector*—The testimony of Nelson, the locator, tends to show that in the month of May, 1915, he discovered a cross-vein at or near the easterly end line of the Royal George No. 4. It also appears that at or near the point of contact of these veins Nelson uncovered what promises to be a mine. To secure the full benefit of his discovery at this point he located all the adjacent territory by virtue of the Royal Georges Nos. 5, 6, 7, and 8. It appears that these and the other prior locations were so marked on the ground that their end lines served as a common end line for the entire group, except the Royal George Protector. Nelson, according to his testimony, became fearful or apprehensive, because of the apparently long distance from the point of the discovery on the Royal George No. 4 to the easterly end line as staked, that there might be some vacant ground between the point 900 feet as called for by his location notice and the easterly end of the claim as monumented that included his later discovery, and, as he says, "to claim any vacant ground that might be there," he, without amending the location of the Royal George No. 4, on May 15, 1915, located the supposedly excess ground by posting a notice of location

in the southeast corner monument of the Royal George No. 4, which then served as a common corner for Nos. 2, 4, 7, and 8, claiming by this notice 200 feet in a southerly direction, and 1,300 feet in a northerly direction, and 300 feet on each side, and called the claim "Royal George Protector."

Third. *Gilt Edge Fraction Lode Claim*—It appears the defendants (appellants), upon reading the description contained in the location notice of the Royal George No. 4, and stepping off·the distance from the discovery point to the easterly end line as plainly marked on the ground, were satisfied that the ground as monumented was approximately 250 or 300 feet in excess of that called for in the notice at the east end. On June 15, 1915, the defendants located the excess ground lying between the point 900 feet, as called for by the notice, and the easterly end line, as staked, by posting a notice of location, and stating therein that "the general course of the vein is easterly and westerly, and the size of the claim is 290 feet long by 600 feet wide. This claim shall be known as the Gilt Edge Fraction." The evidence of the defendants tends to show that, at the time they made their location of the Gilt Edge Fraction, in the stake which was the common corner for the four Royal Georges named there was no notice of the Royal George Protector, and no stakes or monuments were found that purported to define such a location. Their evidence further tended to show that the Royal George Protector was a fraud, fictitious, antedated, and located subsequent to the Gilt Edge Fraction, for the purpose of defeating the validity of the latter claim.

The plaintiffs admit by their pleading and evidence that the Royal George No. 4 was originally monumented too large. On July 2, 1915, they had the claim surveyed, and found it to be $90^7/_{10}$ feet too long from end line to' end line, and 1,162 feet from the point of discovery to the easterly end line, or 262 feet over the call of 900 feet. The surveyor, ostensibly at the request of plaintiffs and in disregard of defendants Gilt Edge Fraction location, drew in the westerly end line of the claim

$90^7/_{10}$ feet, but did not disturb the stakes on the east end.   Whether the excess was unoccupied public mineral land, open to location, the plaintiffs are in no position to deny, because they claim title and right to the possession of the ground by virtue of the Royal George Protector location, but the court saw fit to charge the jury as follows:

"If you find from the evidence that, at the time the defendants located their Gilt Edge Fraction, they knew the position of Nelson's easterly corners and of his work, they are bound by that knowledge.   If they knew that Nelson's notice called for 900 feet easterly on the Royal George No. 4, and that his easterly monuments as placed on the ground were about 1,162 feet distant, they are bound by the knowledge of the position of the monuments on the ground, and the fact that the notice called for 900 feet cannot benefit the defendants or give them any rights based upon said erroneous call of 900 feet."

"If you find from the evidence that the defendants were not deceived or misled by any false or deficient description in Nelson's notice of the Royal George No. 4, and that they knew the easterly boundaries of the Royal George No. 4, and entered within them for the purpose of acquiring for themselves the benefit of Nelson's discovery, labor, and expenditure, believing that he had forfeited his rights, and not in ignorance of such rights, and that they had knowledge that the notice of Nelson did not describe the ground actually monumented by him, then the court instructs you that the purpose of description is to give notice, and that, since the defendants had notice, they are not in a position to complain of technical defects which the defendants knew to be defects or errors, and that such defects or errors of description in no way affect the plaintiffs' rights."

5. It is obvious that the jury were told, in effect, that if they found that the defendants entered upon the ground in the possession of plaintiffs, not in ignorance of its boundaries, but with full knowledge thereof, they were bound by that knowledge.   It is apparent that the

plaintiff's position raised "most persuasive equities" in their favor. It is conceded that the defendants located the ground knowing that it was within the staked boundaries of the plaintiffs, and that the defendants' location embraced the plaintiffs' possible mine; that, if the location of the defendants was valid, it would deprive a prospector of his reward. By these instructions the jury were, in effect, told they might find for plaintiffs, although they should be satisfied that the ground was open to location at the time the defendants initiated their claim thereto. By these instructions the door was opened for the jury to do equity between the parties agreeably to their own feelings, regardless of whether the Gilt Edge Fraction lode was valid and the Royal George No. 4 invalid. Brown v. Oregon King M. Co. (C. C.) 110 Fed. 728. If the ground in dispute was open to location at the time defendants initiated their claim, it was immaterial to the validity of the Gilt Edge Fraction that the defendants knew of the boundaries of the Royal George No. 4, or that the situs of the claim was known to them. Walsh v. Henry, 38 Colo. 393, 88 Pac. 450; Brown v. Oregon King M. Co., supra.

In the case of Hauswirth v. Butcher, 4 Mont. 299, 1 Pac. 714, followed in the case of Leggatt v. Stewart, 5 Mont. 107, 2 Pac. 320, the court said:

"Taking the discovery as the initial point, the boundaries must be so definite and certain as that they can be readily traced, and they must be within the limits, authorized by law, otherwise their purpose and object would be defeated. The area bounded by a location must be within the limits of the grant. No one would be required to look outside of such limits for the boundaries of a location. Boundaries beyond the maximum extent of a location would not impart notice, and would be equivalent to no boundaries at all."

6. Every competent locator has the right to initiate a lawful claim to unoccupied public land by a peaceable adverse entry upon it while it is in the possession of those who have no superior right to acquire title or to hold the possession. Belk v. Meagher, 104 U. S. 279,

26 L. Ed. 735; Thallman v. Thomas, 111 Fed. 279, 49 C. C. A. 317; Lindley on Mines, sec. 219.

We cannot escape the conclusion that by these instructions the jury were, in effect, told that the defendants, at the time they attempted to initiate their location, were jumpers or trespassers. To what extent the errors may have influenced the jury in finding all the issues in the case in favor of plaintiffs it is not our province to determine.

7. By other instructions the jury were also, in effect, told that, regardless of defendants' intervening right, the plaintiffs might cast off the excess at either end of their claim, as they saw fit, when they discovered their innocent mistake. To uphold such instruction, a claim 1,750 feet along the vein can be shifted from one end to the other, as circumstances might require, to cover the vested right of a third person within such 1,750 feet. The object of the law in requiring the location to be distinctly marked on the ground is a requirement admittedly designed to prevent floating or swinging. Gleeson v. White M. Co., 13 Nev. 462. The general rule is that, where the claim is excessive in length, if the error is innocently made the claim is valid, but the excess is void. Lindley on Mines, sec. 362; Snyder on Mines, secs. 397, 398; Costigan, Mining Law, 197. It follows that the ground was open to location.

Entertaining these views, it is unnecessary for us to determine whether a subsequent locator may measure the ground of a prior locator, cast off and locate the excess by following the calls for distances contained in the location notice from the point of discovery. This position is supported, among others, by the following authorities: Flynn Group M. Co. v. Murphy, 18 Idaho, 266, 109 Pac. 851, 138 Am. St. Rep. 201; Cardoner v. Stanley Co. (C. C.) 193 Fed. 517; Lindley on Mines, sec. 362.

But the question still remains: Which party as against the other has a better right to the ground in dispute? As the ground was open to location, the defendants

could as lawfully locate it as the plaintiffs.  If the plaintiffs' location of their Royal George Protector was a prior, valid, subsisting location at the time the defendants initiated their location of the Gilt Edge Fraction, the ground was not unoccupied, unappropriated public land.  The very existence of the Royal George Protector was attacked by defendants and bitterly contested from its inception.  The evidence was conflicting—in fact, in sharp conflict.  The jury were instructed as to the credibility of the witnesses.  Evidently from their verdict they believed the witnesses for the plaintiffs as against those of the defendants.  The court adopted the general verdict of the jury, and based its judgment of plaintiffs' ownership and right of possession thereon.

8-10.  At the conclusion of plaintiffs' testimony counsel for defendants made a motion to require plaintiffs to elect whether they would stand upon their rights as asserted under the location of the Royal George No. 4 location or the Royal George Protector location.  The motion was denied.  The ruling of the court is assigned as error, upon the theory that the two asserted claims are inconsistent.  Some courts hold that inconsistent causes of action and defenses cannot be pleaded, but that ruling is based upon the theory that one or the other must be false, and that the pleader ought to know which is true and which is false, and that he should be compelled to choose between them; and it has been squarely held by this court that a party may plead inconsistent defenses, provided they are not so incompatible as to render one or the other absolutely false.  Clarke v. Lyon County, 7 Nev. 81.  We think the rule is sustained by both reason and authority, and see no reason for repudiating the rule heretofore adopted.  See, also, 31 Cyc. pp. 150–152.  There is no inconsistency in the evidence offered in support of the validity of the respective locations.  The court did not err in its ruling.

11.  Are the defendants entitled to a new trial?  This question is more perplexing than difficult.  The defendants admit having initiated a claim to the excess ground

knowing it to be within the staked boundaries of the Royal George No. 4, and by their location covered the plaintiffs' workings thereon. They located the ground in controversy for the reason that the law governing the manner of making locations had not been complied with. This, in mining districts, is called "claim jumping." The sympathies of the jury in such cases are generally with the original locator. Under the attending circumstances leading up to the defendants' location, the jury should have been plainly charged, as requested by the defendants, that if the plaintiffs' location of the Royal George No. 4 was invalid for the reasons assigned, the defendants could peaceably initiate a claim to the excess ground within its staked boundaries, assuming it to be in other respects valid. Lindley on Mines, sec. 219.

12. The right of location upon mineral land of the United States is a privilege granted by Congress, but can only be exercised within the limits of the prescribed grant. The right to possession comes only from a valid location. Consequently, if there be no valid location (as here admitted), there can be no possession under it. Location does not necessarily follow from possession, but possession from location. Belk v. Meagher, supra.

13-15. Courts in the enforcement of the written law are not guided by sentiment. When the law is plain, positive, and unequivocal in its terms, it is the bounden duty of courts to obey its mandates, although by so doing in some cases it would result in great and manifold injustice. Rose v. Richmond M. Co., 17 Nev. 59, 27 Pac. 1105. Reading the entire charge as given to the jury, in connection with the court's ruling on the motion for a new trial, the impression is irresistible that the learned trial court gave the instructions complained of to prevent an injustice. It is impossible for us, as above stated, to determine to what extent these errors may have influenced the court and jury in finding in favor of the plaintiffs upon the other independent and distinct issues in the case, equally as vital and fairly tried. The general verdict of the jury was a finding on all the issues in favor of the plaintiffs. The court

adopted this verdict as its findings of fact, and rendered judgment accordingly. The rule is that, when there are sufficient findings on issues made in the case to support the judgment, it is immaterial that there is no finding, or an erroneous finding, on some other issue, which, if made, or differently made, would not compel any different conclusion from that reached by the findings which were actually made. Wolfsen v. Smyer (Cal.) 175 Pac. 10. Upon a most careful consideration of the entire record, it would be an arbitrary ruling upon our part to say that the conclusion reached by the court and jury would have been different had the jury been correctly instructed as to the issue of law raised by the conflicting locations—the Royal George No. 4 as originally located and the Gilt Edge Fraction. Eliminating this finding, the other issue to be determined was: Which party as against the other had the better claim to the premises in dispute in virtue of the Royal George Protector and the Gilt Edge Fraction? This issue having been determined in favor of plaintiffs and against the defendants upon conflicting testimony, we decline to disturb the verdict and finding based thereon.

The order overruling and denying the defendants' motion for a new trial is affirmed.

## ON PETITION FOR REHEARING

By the Court, COLEMAN, C. J.:

Several grounds are urged for a rehearing, and since they are presented with apparent earnestness, we have deemed it advisable to briefly set forth our views in regard to them.

1. It is first contended that, since the original opinion concedes that certain instructions of the court were erroneous and misleading, it must be presumed that plaintiffs were prejudiced thereby. This contention would be unanswerable but for the fact that this is a suit in equity, and that the verdict of the jury is merely advisory (State v. Murphy, 29 Nev. 253, 88 Pac. 335), and that in such cases this court will not review errors assigned to instructions given to a jury, or reverse a

judgment because they were erroneous (King v. Pony G. M. Co., 28 Mont. 74, 72 Pac. 315).

It is also insisted that the judgment is not sustained by the evidence. This question was found adversely to appellants' contention by the trial judge, and cannot be disturbed upon this hearing, as we clearly pointed out in the opinion heretofore filed.

2. It is strenuously asserted in the petition for rehearing that the plaintiffs never established a valid location monument upon the Royal George Protector claim. This point was not urged upon the lower court, nor upon this court upon the original hearing, and cannot now be considered. Gamble v. Silver Peak, 35 Nev. 323, 133 Pac. 936.

Petition for rehearing denied.

DUCKER, J., not having been a member of the court when the foregoing case was formerly disposed of, did not participate in the consideration of the petition for rehearing.