[No. 2427]

S. C. STRATTAN, AND S. C. STRATTAN, AS ADMINIS-
TRATOR OF THE ESTATE OF MRS. S. C. STRATTAN,
DECEASED, APPELLANTS, *v.* J. P. RAINE, AS RECEIVER
OF THE GOLD QUARTZ MINING COMPANY OF LANDER
COUNTY, NEVADA, RESPONDENT, AND GOLD QUARTZ
MINING COMPANY OF LANDER COUNTY, NEVADA,
INTERVENER-RESPONDENT.

[192 Pac. 471; 197 Pac. 694; 200 Pac. 533]

1. TRIAL—GENERAL VERDICT IMPROPER IN EQUITY SUIT.
    A general verdict should not be received in an equity suit.

2. TRIAL—NO LEGAL RIGHT TO HAVE CASE RESUBMITTED TO SECOND
    ADVISORY JURY.
    A general verdict, or special findings, as the case may be, in an equity suit, being only advisory, and in no way binding upon the court, no litigant has a legal right to insist that an advisory jury be called in the first instance or to except to a refusal of the court to resubmit the case to a second advisory jury.

3. MINES AND MINERALS—FORFEITURE OF MINING CLAIM FOR FAIL-
    URE TO WORK MUST BE CLEARLY ESTABLISHED.
    Before forfeiture of a mining claim can be declared for failure to do annual assessment work, it must be clearly established.

4. MINES AND MINERALS—COUNTING WATCHMAN'S SERVICES ON
    ANNUAL LABOR EXPENDITURES IS DISFAVORED.
    While possibly under some circumstances the services of a watchman to take care of necessary buildings on a mining claim may count as annual labor, the courts should be reluctant to accept such services as applying on annual labor.

5. MINES AND MINERALS—LOCATION BY ANOTHER INVALID WHERE ASSESSMENT WORK IS RESUMED IN GOOD FAITH.

Even if $100 worth of work was not done on a claim during a certain year, yet if work had been resumed thereon prior to the succeeding January 26, and was being carried to completion in good faith and reasonable diligence when another party undertook to locate the ground, such other party's location was not valid.

6. MINES AND MINERALS—ON RESUMPTION OF WORK ON CLAIM, DILIGENT PROSECUTION ONLY REQUIRED.

The law does not contemplate that when work is resumed on a mining claim it shall be prosecuted every hour in the day, or that a full shift shall be done every day, but simply requires that it be prosecuted in good faith and with reasonable diligence.

## ON PETITION FOR REHEARING

1. APPEAL AND ERROR—QUESTION PRESENTED FIRST ON PETITION FOR REHEARING CANNOT BE CONSIDERED.

A question urged for the first time on petition for rehearing cannot be considered.

2. APPEAL AND ERROR—APPELLATE COURT MUST ABIDE BY CONCLUSION OF TRIAL COURT AS TO WEIGHT OF CONFLICTING TESTIMONY.

When the testimony is conflicting, it is the duty of the appellate court to abide by the conclusion reached by the trial court as to its weight and sufficiency.

APPEAL from Third Judicial District Court, Lander County; *Peter Breen,* Judge.

Suit by S. C. Strattan, individually, and as administrator of the estate of Mrs. S. C. Strattan, deceased, against J. P. Raine, as receiver of the Gold Quartz Mining Company of Lander County, Nevada, in which the Mining Company intervened. From a judgment for intervener, and an order denying a new trial, plaintiff appeals. **Affirmed. Petition for rehearing denied.**

*A. Grant Miller,* for Appellants:

The only question for determination in the court below was that set out in the stipulation by the parties under which the case was tried, namely, whether or not the ground in dispute was open, unappropriated public domain at the time it was located by appellant. The stipulation admitted every allegation of the complaint, except that the ground was open, unappropriated public domain, and the further allegation as to the work and

labor of development subsequent to plaintiff's location of the ground.

Plaintiff was entitled to a new hearing before a new advisory jury, for the reason that the advisory jury disagreed upon all the main issues in the case. The court never made any order dispensing with the services of an advisory jury, and there was nothing in the return of the said jury that assisted the court in reaching a determination of the cause, or that it could adopt as findings in the case.

The judgment and decree are contrary to law and to the evidence.

The exclusion of competent evidence upon a material issue is reversible error (25 L. R. A., N.S.), and such exclusion is a denial of an absolute right. 25 L. R. A. 683, note.

The right of the original claimant is terminated by the entry of a new claimant. Madison v. Octave Oil Co., 99 Pac. 176.

There was no authorization for defendant, as receiver, to do any work or to expend any money upon the mining ground in dispute. "Work done by  *  *  *  a stranger to the title will not inure to the benefit of the locator." Nesbitt v. Mining Co., 24 Nev. 273; Little Gunnell G. M. Co. v. Kimber, 1 Morrison Min. Rep. 536; Fed. Case No. 8402; In Re McCormack, 40 L. Ed. U. S. 498.

The requirement of the law that one hundred dollars worth of work shall be done upon each claim during each current year is absolutely vital to the possessory title of the locator. 2 Lindley on Mines, p. 1531; Morgan v. Tillotson, 15 Pac. 88; Jackson v. Roby, 27 L. Ed. U. S. 990; Chambers v. Harrington, 28 L. Ed. U. S. 452; Anthony v. Jillson, 23 Pac. 419; Goldberg v. Bruschi, 81 Pac. 23; Du Prat v. James, 4 Pac. 563; Renshaw v. Switzer, 13 Pac. 127; Rev. Laws, 2430; McCullough v. Murphy, 125 Fed. 147; Whalen Con. G. M. Co. v. Whalen, 127 Fed. 611; Remmington v. Baudit, 9 Pac. 819; Honaker v. Martin, 27 Pac. 397.

There is no foundation in law for the claim that the

watchman's services may be considered as assessment work. "The cases must be rare in which it can justly be said that such money is expended in prospecting and developing the mine." Hough v. Hunt, 138 Cal. 142, 70 Pac. 1059, 94 Am. St. 17.

The true criterion is whether or not the alleged work directly develops the mineral-bearing lode or is necessary thereto. Evaline G. M. Co. v. Yosemite G. M. & M. Co., 115 Pac. 946; Stolp v. Treasury G. M. Co., 80 Pac. 817; Walton v. Wild Goose M. & T. Co., 123 Fed. 208; Bishop v. Bailey, 41 Pac. 936; Mattingly v. Lewishon, 35 Pac. 111; Penn v. Oldhauber, 61 Pac. 649.

Abandonment is a question of intention, while in forfeiture the element of intention is not involved. St. John v. Kidd, 26 Cal. 263. Abandonment operates instanter. Brown v. Gurney, 50 L. Ed. U. S. 717. Forfeiture is not complete until some one else enters with the intent to relocate the property. Little Gunnell M. Co. v. Kimber, supra. Abandonment is ordinarily a question of fact to be determined by the jury. Lockhart v. Wills, 50 Pac. 318. The facts are to be determined by the acts and conduct of the parties. They may be specific or implied, and may be inferred from the act or failure to act. Conn v. Oberto, 76 Pac. 369; N. A. Explor. Co. v. Adams, 104 Fed. 404. Abandonment may also be proved by the acts and conduct of the parties, even against their specific declarations to the contrary: Trevaskis v. Peard, 44 Pac. 246.

Proof of forfeiture is made whenever it is shown, by a preponderance of evidence, that the full amount of annual labor or improvement was not expended within a given year. Big Three M. & M. Co. v. Hamilton, 107 Pac. 301; Nevada Explor. Co. v. Spriggs, 124 Pac. 770; Copper Mt. M. & S. Co. v. Butte & Corbin Con. M. Co., 104 Pac. 540; Swanson v. Kettler, 105 Pac. 1059.

*Geo. F. Wasson, John Jensen,* and *A. J. Maestretti,* for Respondents:

To all the questions propounded, more than a majority

of the advisory jury answered in favor of the respondents. Trial by a new advisory jury is not a matter of right. Motion for a new trial was premature. "A motion is premature if filed before the verdict is rendered or before the trial is terminated, and while the records show that no decision has been reached." Ency. Pl. & Pr., p. 862.

The burden of proving abandonment or forfeiture of a mining claim or claims rests absolutely on the party or parties asserting the abandonment or forfeiture, proof of which must be clear and convincing. Whalen Con. M. Co. v. Whalen, 127 Fed. 611; McCullough v. Murphy, 125 Fed. 147.

The law does not favor forfeitures. The rule is well established that a forfeiture cannot be established except upon clear and convincing proof of the failure of the original locator to have work performed or improvements made to the amount required by law. The burden of proof to establish a forfeiture rests upon him who asserts it. McCullough v. Murphy, 125 Fed. 147; Hammer v. Garfield M. & M. Co., 130 U. S. 291; Book v. Justice M. Co., 58 Fed. 160; Justice M. Co. v. Barclay, 83 Fed. 554; 27 Cyc. 600. Forfeitures are deemed odious. They must be made clearly apparent before courts will enforce them. Mt. Diablo M. & M. Co. v. Callison, 5 Sawy. 439; Fee v. Durham, 121 Fed. 468; Lockhart v. Rollins, 21 Pac. 413; Coleman v. Curtis, 30 Pac. 266; Morrison, Mining Rights (15th ed.), p. 127; Johnson v. Young, 34 Pac. 175.

A relocator cannot take advantage of the fact that the work was not done because prevented by his own act. Garvey v. Elder, 21 S. D. 77; Morrison, Mining Rights (15th ed.), p. 127.

Some cases have held that if the original locator resumes before the new locator has completed his location and done all the acts thereunder, the former holds the property. Honaker v. Martin, 27 Pac. 397.

Where possession is wrongfully taken and withheld,

the rightful owner is excused from the necessity of doing the work. Utah Co. v. Dockert Co., 6 Utah, 183; Slavonian Co. v. Perasich, 7 Fed. 331; Erhardt v. Boera, 113 U. S. 1115.

The services of a watchman constitute annual labor, and may be treated as such. Morrison, Mining Rights (15th ed.), p. 122; Lockhart v. Rollins, 21 Pac. 413; Altoona Co. v. Integral Co., 45 Pac. 1047; Trip v. Dunphy, 28 L. P. 14. Pay of a watchman is allowed where there is portable property needing protection. Kingsley v. New Vulture Co., 90 Pac. 438; 27 Cyc. 590, 591; 2 Lindley on Mines (3d ed.), p. 1548.

By the Court, COLEMAN, J.:

Prior to and during 1915, the Gold Quartz Mining Company owned a group of thirteen mining claims, situated in the Bullion mining district, Lander County, Nevada. In February, 1914, J. P. Raine had been appointed receiver of the company. He died in November, 1915, just as he was preparing to do the annual assessment work upon said group of claims. In December, 1915, R. F. Raine was appointed administrator of the estate of the deceased, and J. P. Raine, Jr., temporary receiver of the company, with instructions to do the assessment work upon the group of claims for 1915. Upon the appointment of the temporary receiver, which was late in December, 1915, he got together a crew of sixteen men for the purpose of doing the annual assessment work, and the operations were immediately begun.

Mrs. Strattan boarded the men so employed until about January 24, 1916. On the morning of January 26, claiming that the annual assessment work had not been done upon the Ajax and the Giant, two of the claims of said group, and that they were open to location, she entered upon the ground and located them as the Board Bill and Board Bill No. 1 mining claims. The Gold Quartz Mining Company intervened, and from a judgment in favor of said company as intervener, and

an order denying a motion for a new trial, this appeal has been taken.

The foregoing statement presents an outline of the case. Other facts will be alluded to in the opinion.

Before taking up the consideration of the case upon its merits, we desire to dispose of some preliminary matters. We direct attention to paragraphs 3, 4, and 5 of rule 4 of this court. Paragraph 3 provides that when a transcript is typewritten the first impression thereof shall be used in making up the record on appeal. Paragraph 4 provides that the pleadings, proceedings, and bill of exceptions shall be chronologically arranged in the transcript, and prefaced with an alphabetical index specifying the folio of each separate paper, order, or proceeding, and of the testimony of each witness. Paragraph 5 provides also that for failure to comply with the requirements mentioned the record may, upon motion, and for good cause shown, be stricken from the files. The transcript in this case is neither chronologically arranged nor indexed, the entire bill of exceptions is a carbon copy, and many of the pages in the record are very indistinct; nor does it appear that the bill of exceptions was ever settled by the trial judge. However, since counsel for respondent have treated the record as being in compliance with all requirements, we will not ourselves raise objections to it; but we wish to warn the members of the bar at large; and while we are aware of the fact that counsel for appellant was out of the state for several months, during which time the record was prepared, and that he did not give his personal attention to supervising its preparation, these circumstances are not sufficient excuse for its condition.

1, 2. We come now to the first contention of counsel for appellant, namely, that the court erred in refusing to set aside the findings of the advisory jury and resubmit the case to another advisory jury. There was no general verdict in the case. There could not have been, in view of the fact that the jury was asked to make

special findings only. A general verdict should not be received in an equity suit. Simpson v. Harris, 21 Nev. 376, 31 Pac. 1009. At most, a general verdict, or special findings, as the case may be, in an equity suit, is only advisory, and is in no way binding upon the court; hence no litigant has a legal right to insist that an advisory jury be called in the first instance, or to except to a refusal of the court to resubmit a case to a second advisory jury. State v. Murphy, 29 Nev. 253, 88 Pac. 335. The court having made special findings of fact and entered its decree based thereon, appellant's rights were in every way preserved.

No memorandum of errors was filed in support of the motion for a new trial, and the only remaining questions to be considered are whether the court erred in refusing to grant a new trial upon the ground of newly discovered evidence, and upon the further ground of the insufficiency of the evidence to justify the judgment.

Did the court err in refusing to grant a new trial upon the ground of newly discovered evidence? In support of this contention, affidavits by Julius Siri, S. C. Strattan, and A. Grant Miller were filed. The affidavits of Strattan and Miller do not pertain to any matters within their own knowledge, except as to questions of diligence, and the like. It is claimed that the so-called newly discovered evidence will contradict that given by W. S. Raine in behalf of defendants as to the number of shifts of work performed by Siri upon the Ajax claim. He testified as follows:

"Q. Well, showing your work, what does your record show as to the time that Mr. Siri, if such a party was working, and what time he put in on the Ajax? A. I overlooked that a moment ago in the time book there. Four days in January, Julius Siri helped Bosoaglia over on the Ajax.

"Q. When did he come? A. He came here on the last of December.

"Q. How much time did he work? A. One shift.

"Q. You testified to shifts? A. One is marked in the books, because I kept their time; but he worked some in January."

This is the testimony sought to be overthrown by Siri, who, in his affidavit, states on this point:

"I also worked about a day and a half on the ground known as the Ajax, prior and up to January 5, 1916."

He also swears that he went to work on December 30, 1915, and was laid off January 24, 1916. There is no showing by the affidavit that upon a new trial Siri's testimony would conflict with that of Raine's. So far as Siri's affidavit shows, he might have worked upon the Ajax every day between January 5 and 24. The court did not err in refusing to grant a new trial upon the ground urged.

The remaining question is as to whether or not the receiver forfeited his right and that of the company to the Ajax and Giant claims by failure to do the annual assessment work for 1915 on or before December 31, 1915; or in case he had not done such annual assessment work on or before the date mentioned, whether there had been a resumption of work upon such claims, and, if so, whether the same was being prosecuted with reasonable diligence when Mrs. Strattan sought to locate the ground.

3. The very purpose of the requirement by the government of $100 worth of annual labor upon a mining claim is to encourage the development of the mineral resources of the country, and we feel that the law should be enforced according to its spirit, with a view of producing the results sought to be obtained by the government; but before a forfeiture can be declared it must be clearly established. 2 Lindley on Mines (3d ed.), 645. While no verdict was rendered by the jury which could bind either the trial court or this court on appeal, the fact is that in answering the special questions a majority of the jurors answered that the work upon the claims was resumed on or about December 31, 1915, with the bona-fide intention of doing the annual labor thereon for that

year, and that $100 worth of work was thereafter completed with reasonable diligence, as annual labor for such year. If the finding of a majority of the jury is correct, whether or not the work was completed after the attempted location by Mrs. Strattan, the ground was not open for location on January 26, when she sought to locate it. Though the finding of the court is not in the language of the jury, it finds that the claims were not open to location on January 26. The court also found as a fact that $100 worth of work had been done upon each of the claims by the receiver prior to January 26.

4. The only way this finding could be sustained as to the Giant claim would be by counting as annual labor $60 paid out for the services of a watchman. The authorities hold that the erection of buildings upon a mining claim, the building of a road to be used in developing a claim, and the like, may count as annual labor, and some of the authorities hold that the services of a watchman to take care of necessary buildings upon a mining claim may, under certain circumstances, count as annual labor; and it may be that the services of the watchman in this instance should count; but it certainly cannot be said that the physical development of a mining claim can be sacrificed by the sham of employing a watchman; otherwise the chief purpose of the statute will be defeated. Every case must stand upon its particular facts, and the courts should be reluctant to accept the services of a watchman as applying on annual labor. In this case we do not deem it necessary to determine whether the services of the watchman should be considered, since we think the other facts will justify the conclusion that there had been no forfeiture on January 26, the morning of the attempted location by appellant.

As to the Ajax claim, there is evidence in the record, without including the services alleged to have been rendered by a watchman, to show, as found by the court, that over $100 worth of work had been performed upon

it prior to the morning of January 26, when Mrs.
Strattan sought to locate the ground. In reaching this
conclusion, we do not include $5 paid for powder, $5
paid for a windlass, and $4.50 paid for a bucket. We
do not think it necessary to discuss in detail the evidence
as to the work done upon the Ajax. Evidently the trial
court accepted respondent's evidence as to the work done
on the Ajax as being satisfactory in every respect, and
we see no reason for questioning the correctness of its
conclusion in so doing.

A different situation exists as to the Giant claim. As
we have said, there were thirteen claims in the group
owned by the defendant company, and in the latter part
of December the receiver took a crew of sixteen men to
the property to do the annual assessment work for 1915.
The evidence warrants the conclusion that prior to the
time this crew of men were put to work upon the group
of claims, in fact at least $48 worth of work had been
performed upon the Giant claim, leaving $52 worth to
be done thereon—even if the $60 for watchman's ser-
vices is not counted. The blacksmith shop and some
other buildings were upon the Giant claim, and of the
crew of sixteen men doing the work upon the claims in
question from December 30, 1915, to January 24, 1916,
one P. R. Keller worked in the blacksmith shop, doing
what work was necessary in sharpening the tools of the
men who were doing the work upon the other claims,
and, when not so engaged in sharpening tools, would
do work upon the Giant claim. He testified that he
averaged for each day from January 1 to 26 two hours
of work upon the property. Counting this at the regular
rate—lumping it into shifts of eight hours—the work
was worth $24, making a total of $72 worth of work
done upon the Giant claim at the time Mrs. Strattan
sought to locate the ground. The undisputed evidence
is that, on the 23d or 24th of January, P. R. Keller was
employed by the receiver to stay upon the property,
after all others had left, and divide his time working

upon the Ajax and Giant claims, one-half of each shift to be put in upon each of the claims; and that, in pursuance of said employment, he moved his things. upon the property, and on January 25 worked eleven hours in all, a part of the day being put in fixing up the office which he was to occupy, one of the windows having been knocked out and other damage done the day before, the rest of the time being devoted to gathering up and storing the tools used by the men who had quit work upon the property and gone away. The evidence shows that the work on the office was necessary to make it habitable, in view of the weather conditions.

There was evidence by Mrs. Strattan and her husband that practically no work had been done upon the. Ajax and Giant claims by anybody during the time the crew of men were there. Strattan was one of the crew of sixteen who had been engaged in working elsewhere at the time it is testified the work was being done upon the two claims; and in view of the fact that most of the work testified to as having been done was of such a nature that he could know nothing about it unless in the mine during the working hours of the day—at least, as to the Giant claim—his testimony deserves little consideration. Mrs. Strattan was cooking three meals a day for seventeen or eighteen people every day during the carrying on of the operations, and was at somewhat of a disadvantage to observe the performance of the men. As to the credibility of the witnesses and the weight to be given their testimony, the trial court was better situated to determine than we are. There is a conflict in the evidence, and no theory exists upon which we can say that the court was not justified in accepting the testimony of the defendant as to the amount of work done upon the property.

That it may not be thought that we have overlooked the testimony of Fred King and A. E. Raleigh, we may simply say that it shows they were in no position to know what was done at the time relative to which they

testified. One of them admitted that he was not on the
property for a long time, and the other was away during
the daytime.

5. Conceding for the purpose of the case that $100
worth of work was not done upon the Giant claim during
the year 1915, the question is: Had work been resumed
thereon prior to January 26, 1916, and was it being
carried to a completion in good faith and with reason-
able diligence at the time Mrs. Strattan undertook to
locate the ground? If the question is answered in the
affirmative, the judgment must be affirmed. 2 Lindley
on Mines (3d ed.), sec. 654. In response to question 10,
submitted by plaintiffs, the jury answered unanimously
that the work performed by Keller upon the Giant claim
from December 31, 1915, to January 26, 1916, was
continuous.

6. The law does not contemplate that when work is
resumed upon a mining claim it shall be prosecuted
every hour in the day, or that a full shift shall be done
every day. It simply requires that it be prosecuted in
good faith, and with reasonable diligence. In view of
the findings of the trial jury, to the effect that after the
work was resumed upon the Giant claim it was continu-
ous to January 26, and the finding of the trial court
supporting the finding of the jury, we see no reason for
disturbing the judgment.

Perceiving no error in the judgment and order com-
plained of, it is ordered that the judgment be affirmed.

### ON PETITION FOR REHEARING

By the Court, COLEMAN, J.:

We see no merit in the petition for rehearing filed in
this case. It does not, in fact, call for serious considera-
tion; for it is evident, from a perusal of the petition,
that our former opinion has not been carefully read.

The first contention made is that we fell into error in
our former opinion in saying that there was no showing
in the affidavit of Siri that his testimony upon a retrial
would conflict with that of Raine. Siri did not say in

his affidavit that he did not work upon the Ajax claim four days in January, 1916, as testified to by Raine. His affidavit, so far as alluding to his work upon that claim, is as quoted in our former opinion, wherein he states that he worked a day and a half on the Ajax prior to January 5. He does not say that he did or that he did not work thereupon between January 5 and 24. Not having said that he did not work upon that property after January 5, we cannot assume that he would swear that he did not. Hence there is no showing that his testimony would conflict with that of Raine. We tried to make this clear in our former opinion.

1. It is also said that, even if it appear that $100 worth of work was done upon the Ajax, it is not shown that the claim was benefited to that extent; and hence the judgment should be reversed. The trial court was in a better position to determine that question than we are, and we do not feel that there is any reason why we should not sustain its finding on this point. Furthermore, this is the first time the point has been presented to us, and it cannot be considered when urged for the first time on petition for rehearing. Nelson v. Smith, 42 Nev. 303, 320, 176 Pac. 261, 178 Pac. 625.

It is said in the petition for rehearing that, while the court expressly stated in the opinion that it did not include an item of $5 claimed as having been paid for a windlass on account of annual labor on the Ajax, we did not include another item of $9 paid for a windlass. We confess we would have been very inconsistent had we done such a thing. The fact is the $9 item was testified to as chargeable against the Giant claim, as were the other items mentioned in the petition, and had nothing whatever to do with the Ajax. Just why the time of the court should be taken up in putting counsel right as to testimony is beyond our understanding, but such is now and then the case. In reaching our conclusion as to the $100 worth of work done on the Ajax, we considered items for labor only.

Fault is found with the opinion for the reason that

we did not hold that the testimony of the plaintiffs should have been accepted, instead of that of the defendant, as to the work done. It is said in the petition:

"It would seem as if respondent had been given the benefit of every doubt and respondent's testimony has everywhere been taken as true."

2. We have often held that when the testimony is conflicting it is our duty to abide by the conclusion reached by the trial court as to its weight and sufficiency. Dixon v. Miller, 43 Nev. 280, 184 Pac. 926. The trial court accepted the testimony of the defendants as against that of the plaintiff, and we feel, since no good reason appears to the contrary, that we should be bound thereby. Counsel says:

"One matter which seems to have been overlooked by the court is the fact that the evidence on the part of respondent itself shows that no tools were sharpened by Keller for use on the Giant claim."

If counsel will read our opinion carefully, he will see that we did not say that tools were sharpened for use on the Giant claim. We expressly stated that the tools were sharpened for "the men who were doing the work upon the other claims."

A point is also sought to be made of the fact that we stated in the original opinion that a certain number of the jurors reached certain conclusions as to controverted facts. While we did allude to that matter, we also said that no verdict was rendered which could bind either the trial court or this court, further saying:

"The court having made special findings thereon, appellant's rights were in every way preserved."

No other suggestion calling for consideration is made in the petition.

The petition for a rehearing is hereby denied.